In the Matter of MARY V. MURRAY et al., Appellants, against FIORELLO H. LAGUARDIA, as Mayor of the City of New York, et al., Respondents.

Argued September 9, 1943; decided December 2, 1943.

322

*Menahem Stim, Michael J. Mahoney, Jr.,* and *Murray W. Greif* for appellants. The Redevelopment Companies Law (L. 1943, ch. 234) is unconsitutional in that it is violative of the purposes and intent of Article XVIII of the State Constitution. A statute which grants the benefit of the exercise of the power of eminent domain to a municipality for the benefit of a private corporation ostensibly regulated by law as to rents, profits, dividends and disposition of its property or franchises to engage in providing housing facilities, but which enables that private corporation to shake off the regulations imposed by law, at its will, is clearly in violation of the provisions of section 2 of article XVIII of the Constitution. (*Queens Terminal Co. v. Schmuck,* 147 App. Div. 502; *Matter of Petition of N. Y., L & W. Ry. Co.,* 99 N. Y. 12.) The mere physical clearance and reconstruction of slum areas without regard to the welfare of the slum dwellers is not within the meaning of the public purpose as intended by the Constitutional Convention when it adopted article XVIII. (Revised Record of Constitutional Convention, vols. II, III, pp. 1484–1718.) The Redevelopment Companies Law is unconstitutional in that it is violative of the provisions of article I, section 7(a) of the State Constitution and of the Fourteenth Amendment of the United States Constitution. The purpose for which

the Stuyvesant project is to be built is a private and not a public purpose. To grant the power of eminent domain for a private purpose is violative of the provisions of article I (§ 7a) of the State Constitution. (*Waterloo Woolen Mfg. Co.* v. *Shanahan,* 128 N. Y. 345; *Deerfield River Co.* v. *Wilmington Power Co.,* 83 Vt. 548; *Olmsted* v. *Morris Aqueduct,* 47 N. J. L. 311; *Board of Health* v. *Van Hoesen,* 87 Mich. 533; *Matter of Niagara Falls & Whirlpool Ry. Co.,* 108 N. Y. 375; *Matter of Mayor of New York,* 135 N. Y. 253; *Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333.) For the same reason the Act is violative of the provisions of the Fourteenth Amendment of the Constitution of the United States. (*Missouri Pac. Ry. Co.* v. *Nebraska,* 164 U. S. 403; *Chicago, Burlington & Quincy Ry. Co.* v. *Illinois,* 200 U. S. 561.) The plan and contract are not in conformity with the provisions of the Redevelopment Companies Law. The respondents are in error when they contend that the regulatory provisions continue only until the rehabilitation purpose is accomplished. Both the Constitution and the enabling act provide for regulation of the redevelopment company long after the completion of the rehabilitation project.

*Henry Epstein, Edward Weinfeld* and *Shirley Adelson* for Citizens' Housing Council of New York, Inc., et al., *amici curiae,* in support of certain of appellants' points. The Redevelopment Companies Law violates article XVIII, section 2, of the State Constitution. Section 26 of the Redevelopment Companies Law permitting the local legislative body to grant tax exemption by contract, without setting up standards or guides, in substance violates article III, section 17, of the State Constitution or unduly delegates to the local body legislative power which the Legislature itself does not possess. (*Troy Union R. R. Co.* v. *City of Troy,* 227 App. Div. 351, 253 N. Y. 597.)

*Ignatius M. Wilkinson, Corporation Counsel (Jeremiah M. Evarts* and *William S. Lebwohl* of counsel), for City of New York et al., respondents. The Redevelopment Companies Law and the contract at bar conform in every respect with the requirements of article XVIII of the Constitution. (*Clark* v. *Nash,* 198 U. S. 361.) The statute is a valid exercise of legislative power designed to accomplish the constitutional purpose of

rehabilitation. (*Noyes* v. *Erie & Wyoming Farmers Co-op. Corp.*, 281 N. Y. 187.) The contract conforms with the provisions and purpose of the law and is in all respects a valid contract.

*Samuel Seabury* and *Frederic G. Dunham* for Metropolitan Life Insurance Company et al., respondents. Article XVIII of the Constitution applies, by its express terms, to low rent housing projects "or" to projects for the rehabilitation of substandard and insanitary areas—two distinctly different things. Hence there is no merit in appellants' claim that the project here involved is not within the scope of the article because it is a rehabilitation, and not a low rent housing, project. The Act provides that public regulation of redevelopment corporations may be terminated upon the corporation's payment of all taxes previously exempted — an event which, by the terms of the Act, can not occur until after rehabilitation has been completed and the public purpose has been fully accomplished. That provision is not unconstitutional: under the terms of the Housing article (XVIII), leaving it to the Legislature to prescribe the "terms and conditions" on which rehabilitation shall be accomplished, the Legislature was not required to impose any public regulation whatever on redevelopment corporations. Hence there can be no complaint because the regulation which it did impose was not made to continue longer. (*Noyes* v. *Erie & Wyoming Farmers Co-op. Corp.*, 281 N. Y. 187; *Nebbia* v. *New York,* 291 U. S. 502.) There is no merit in appellants' contention that the Act is unconstitutional because it authorizes the condemnation of private property for a use which is not "public". Not only does the Act declare that the taking of property for rehabilitation is a taking for a public purpose, but the Constitution itself so declares. The fact that the redevelopment company may dispose of the property at a profit, after the public purpose has been fully accomplished, does not alter the fact that the taking is for a public use. (*Matter of New York City Housing Authority* v. *Muller*, 270 N. Y. 333; *Hudson River Regulating District* v. *F., J. & G. R. R. Co.*, 249 N. Y. 445; *Brown* v. *United States*, 263 U. S. 78; *Clark* v. *Nash*, 198 U. S. 361; *Strickley* v. *Highland Boy Mining Co.*, 200 U. S. 527; *Hairston* v. *Danville & Western Ry. Co.*, 208 U. S. 598; *Union Lime Co.* v. *Chicago &*

*Northwestern Ry. Co.,* 233 U. S. 211; *Rindge Co.* v. *County of Los Angeles,* 262 U. S. 700; *United States* v. *Gettysburg Elec. Ry. Co.,* 160 U. S. 668.)

LEWIS, J. This appeal presents for decision a challenge to the constitutionality of the Redevelopment Companies Law. (L. 1942, ch. 845, as amd. by L. 1943, ch. 234.)

That challenge is by the petitioners who resist action by the defendants in furtherance of a redevelopment project promoted by the city of New York and to be financed by funds furnished by Metropolitan Life Insurance Company as a means to effect the clearance and rehabilitation of an area found by the New York City Planning Commission to be substandard and insanitary.

The project itself calls for the acquisition and clearance of eighteen city blocks and the erection within that area of thirty-five thirteen-story buildings which will contain more than eighty-eight hundred apartments and will house twenty-four thousand persons. The site of the project is the area bounded by East 14th Street, First Avenue, East 20th Street, East River Drive and Avenue C in the borough of Manhattan.

To accomplish that undertaking it is proposed that a contract and plan, formulated under provisions of the Redevelopment Companies Law, will be entered into by the City with the defendants Stuyvesant Town Corporation and Metropolitan Life Insurance Company — to which it will be convenient to refer as " Stuyvesant " and " Metropolitan " respectively. From the proposed contract it appears that Metropolitan has caused Stuyvesant to be organized as a redevelopment corporation; that Metropolitan is the owner of all the capital stock of Stuyvesant; that it will furnish all funds required to complete the redevelopment project and will guarantee performance by Stuyvesant of the latter's obligation to complete the work of clearance and reconstruction according to the plan therefor.

The petitioners, who own real property within the eighteen city blocks which it is proposed to clear and redevelop, seek by this proceeding to enjoin further action by the defendants designed to accomplish that project. At Special Term the petitioners' motion for injunctive relief was denied and the petition was dismissed on the merits. At the Appellate Divi-

sion the order of Special Term was affirmed, two justices dissenting. The petitioners appeal to this court as of right.

For a long period of years both State and municipal governments have recognized an ever increasing social and economic loss due to conditions in those blighted urban areas where slums exist. It is a fact within common knowledge that conditions prevailing in slum areas affect the health, safety and welfare of the public, causing indirectly a heavy capital loss and a diminishing return of tax revenues. , We took notice of the existence of those conditions and their demoralizing effect when it was said in behalf of this court by Crouch, J.— "The public evils, social and economic, of such conditions, are unquestioned and unquestionable." (*Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333, 339.) Those conditions, when later brought to the attention of the Constitutional Convention of 1938, prompted an intensive study of the problem involved. The product of that study was the new article XVIII of the State Constitution which was proposed by the Convention of 1938 and in that year adopted by the People. For our present purposes it is enough to quote only the following portions of article XVIII:

" [*Housing for persons of low income; slum clearance.*]

" Section 1. Subject to the provisions of this article, the legislature may provide in such manner, by such means and upon such terms and conditions as it may prescribe for low rent housing for persons of low income as defined by law, or for the clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas, or for both such purposes, and for recreational and other facilities incidental or appurtenant thereto.

" [*Idem; power of legislature in aid of.*]

" § 2. For and in aid of such purposes, notwithstanding any provision in any other article of this constitution, but subject to the limitations contained in this article, the legislature may: * * * authorize and provide for loans by the state and authorize loans by any city, town or village to or in aid of corporations regulated by law as to rents, profits, dividends and disposition of their property or franchises and engaged in providing housing facilities; * * * grant or authorize tax exemptions in whole or in part, except that no such exemption

may be granted or authorized for a period of more than sixty years; * * * grant the power of eminent domain to any city, town or village, to any public corporation and to any corporation regulated by law as to rents, profits, dividends and disposition of its property or franchises and engaged in providing housing facilities."

The broad powers given to the Legislature by those new provisions of the Constitution quoted above are the bases for the enactment of the Redevelopment Companies Law, the unconstitutionality of which is now asserted by the petitioners.

In the present case we are concerned with only one of the two separate grants of power stated in section 1 of article XVIII — that single grant of power being to " provide in such manner, by such means and upon such terms and conditions as it [the Legislature] may prescribe * * * for the *clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas* * * * and for recreational and other facilities incidental or appurtenant thereto." (Emphasis supplied.)

Insofar as is material to our present inquiry the statute — after declaring in section 2 the legislative policy and purposes which prompted its enactment — authorizes (§ 4) the incorporation of " redevelopment companies ", the corporate purposes of which are stated to be to acquire one or more areas and to construct, own and operate projects according to a " plan," which is defined (§ 3, subd. 5) as an " * * * undertaking for the clearance, replanning and reconstruction or rehabilitation of a substandard or insanitary area or areas and for recreational and other facilities incidental or appurtenant thereto to effectuate the purposes of article eighteen of the constitution * * *."

The statute also provides (§ 25) that a redevelopment company may be organized and financed by an insurance company which in turn may " own and control, the stock or the income debenture certificates or both of any redevelopment company * * *."

When a plan for a redevelopment project is proposed, and after preliminary approval thereof by the chief fiscal officer of the municipality as to conformity with the provisions and purposes of the Act, section 15 requires that the plan be submitted to the municipal planning commission for its approval as to certain designated features. Upon a statement of action

taken thereupon by the planning commission, which may make any one of several recommendations as prescribed in the Act, the plan, with a proposed form of contract between the municipality, the redevelopment company and any insurance company owning all the stock and debentures of the redevelopment company, shall be submitted to the local legislative body for its approval. The statute requires that such approval shall show conformity with the provisions and purposes of the Act and, among other matters, the extent of tax exemption to be granted to the redevelopment company, "the amount and nature of property to be condemned for the redevelopment company by the municipality" and the terms and conditions of payment therefor by the redevelopment company. Where, as in the present case, the redevelopment company is financed by an insurance company, the contract and plan must be approved by the Superintendent of Insurance. (§ 15, § 3, subd. 10.) If the planning commission shall have issued a certificate of unqualified approval of the plan, and if the Superintendent of Insurance has formally indicated his approval, the approval thereof by the local legislative body may be by resolution adopted by a majority of the whole number of votes authorized to be cast by the members thereof. (§ 15, § 3, subds. 6, 7, 10.)

Under conditions clearly stated in the Act a municipality is authorized to "take property by condemnation for a redevelopment company," and "when title to the real property shall have vested in a municipality, it shall convey the same to the redevelopment company upon final compliance by the redevelopment company * * *" with the terms and conditions of the contract entered into by the municipality with a redevelopment company and an insurance company for the completion of such a project. (§§ 20, 15.) Finally as to conditions under which a redevelopment company may gain tax exemption: by section 26 of the statute the local legislative body of a municipality in which a rehabilitation project is to be undertaken is authorized to agree with a redevelopment company to exempt from local and municipal taxes, other than those for local improvements, for a period not exceeding twenty-five years, all or part of the value of the property included in the project which represents an increase over the assessed valuation of the real property to be acquired. A redevelop-

ment company which has been granted and has received such tax exemption may at any time elect to pay to the municipality the total of all accrued taxes for which exemption has been granted and received, together with interest at the rate of five per cent per annum. Upon such payment tax exemption of the project shall terminate. (§ 26.) After such termination of tax exemption the company may voluntarily dissolve and convey title in fee to the project to its stockholders, or take other action outlined in section 24, and thereupon the provisions of the Redevelopment Companies Law shall become inapplicable to the project and to its owner. (§ 24.)

We find no sound basis for the constitutional objection advanced by the petitioners that the condemnation of private property authorized by the Redevelopment Companies Law is not for a public use. Such a suggestion is refuted by the language of the Constitution itself which specifically proclaims that those separate grants of power to the Legislature made in article XVIII section 1 — to provide for low rent housing *or* for clearance and rehabilitation of substandard areas — are " public purposes." The question of what is a public purpose being primarily a matter of State concern (*Clark* v. *Nash,* 198 U. S. 361, 367, 368), we look to the formal statement of legislative policy which was declaratory of the purpose and led to the enactment of the Redevelopment Companies Law. That statement in the statute (§ 2) concludes as follows: " * * * the necessity *in the public interest* for the provisions hereinafter enacted is hereby declared as a matter of legislative determination." (See, also, § 20.) Although we are aware that such a declaration of legislative policy is not conclusive upon the question of public purpose (*Block* v. *Hirsh,* 256 U. S. 135, 154), we cannot say that the declarations by the Legislature of the reasons for the enactment of the statute now challenged are " palpably without reasonable foundation." Accordingly we give them weight. (*United States* v. *Gettysburg Electric Ry. Co.,* 160 U. S. 668, 680; *Block* v. *Hirsh, supra,* p. 154.)

Nor do we find merit in the related argument that unconstitutionality results from the fact that in the present case the statute permits the City to exercise the power of eminent domain to accomplish a project, from which Metropolitan — a private corporation — may ultimately reap a profit. If, upon comple-

tion of the project the public good is enhanced it does not matter that private interests may be benefited. (*Board of Hudson River Regulating Distric*: v. *Fonda J. & G. R. R. Co.*, 249 N. Y. 445, 453.) True it is that under the provisions of the proposed contract and plan and under the sanction of both article XVIII, section 2, of the Constitution and section 26 of the Redevelopment Companies Law, there becomes effective on the date when the benefits of such an exemption shall first bcome available, a tax exemption limited to the value of improvements on the land and which represents an increase over the assessed value of the property acquired for the project. The Constitution (art. XVIII, § 2) limits such a tax exemption to sixty years; the statute (§ 26) reduces the period of that limitation to twenty-five years. In the case at hand the proposed contract follows the statute (§ 26) and provides that exemption may be effective for twenty-five years unless prior to the end of that period Stuyvesant elects to pay to the city all taxes which have accrued against the project for which Stuyvesant has exercised its right of exemption under the contract, with interest thereupon at the rate of five per cent per annum. In that event tax exemption ceases at the time the payment due in connection with such election is made. In the project here involved the tax exemption which may be granted to Stuyvesant will commence — as prescribed by both the statute (§ 26) and the proposed contract (par. 306) — " from the date on which the benefits of such exemption first become available and effective." That date is fixed by the contract (par. 306) as follows: " The date on which the benefits of such exemption shall first become available and effective shall be *the date of completion* of the project." It is thus made clear that such tax exemption, which, as we have seen, is limited to the value of *improvements* made within the area, cannot occur until the project itself — the work of redevelopment and rehabilitation within the substandard area — has been completed and the public purpose for which the project was designed has been accomplished. It should be added that during the period of tax exemption the statute (§ 16) makes it unlawful for the redevelopment company " to change or modify any feature of a project " without the approval of the municipal planning commission, except by a

three-quarters vote of the local legislative body. And during the period of such tax exemption the redevelopment company " shall not have power to sell any project without the consent of the local legislative body." (§ 23.)

There is no requirement, as asserted by the petitioners, that Stuyvesant must be subjected to regulation by law for all time as to rents, profits, dividends and the disposition of its property. The Constitution (art. XVIII, § 2) provides for only two instances where such regulation is required. One instance is where loans are authorized by the State and by any city, town or village to corporations regulated by law as to such rents, profits, dividends and disposition of property and engaged in providing housing facilities. The other instance is where the power of eminent domain is granted directly to the corporation. In the present case Stuyvesant is to receive no loan of funds from the State, nor from any city, town or village. Nor is Stuyvesant granted the power of eminent domain. Under the statute (§ 20) and under the proposed contract (pars. 202–204) the power of eminent domain is to be exercised only by the city which under conditions set forth in the statute (§ 20) may convey to Stuyvesant the title to all property thus acquired.

There remains for consideration the charge that the Redevelopment Companies Law is unconstitutional because it is not confined to slum clearance and to reconstruction for former slum dwellers. The answer, we think, is found in the significant use of the word " or " in article XVIII, section 1. That constitutional provision grants to the Legislature authority to provide for low rent housing for persons of low income, " or " to provide for " the clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas ". Authorization is thus given to the Legislature to accomplish either of those two purposes " or for both such purposes ". The two purposes, however, are distinct, one being designed to authorize low rent housing for persons of low income as defined by law, the other authorizing appropriate legislation to bring about the clearance and rehabilitation of substandard areas as a means to protect public health and morals and to restore and preserve the financial stability of municipalities which suffer indirectly from conditions existing in those blighted districts. (See New York State Constitutional Convention [1938], Revised

Record, vol. II, pp. 1533, 1559, 1567, 1568, 1577, 1581.) The project with which we are now concerned involves the clearance and rehabilitation of a substandard and insanitary area — not low rent housing for persons of low income.

The People by the adoption of article XVIII of the State Constitution, and the Legislature, by the enactment of the Redevelopment Companies Law, · have recognized that the sinister effect of substandard, insanitary areas, wherever slums exist, exerts a malign influence upon the community at large and thus justifies public control and corrective measures. The statute with which this proceeding is concerned is an effort by the Legislature to promote co-operation between municipal government and private capital to the end that substandard, insanitary areas in our urban communities may be rehabilitated. We are not persuaded that the enactment for that purpose — the statute now challenged by the petitioners — is unreasonable, arbitrary or capricious, or that it bears no real and substantial relation to the object sought to be attained. (*Nebbia* v. *New York*, 291 U. S. 502, 525.) Nor do we find in the statute such a " clear usurpation by the Legislature of prohibited power as must be found before a statute can be pronounced unconstitutional and void." (*Matter of Ricker* v. *Village of Hempstead*, 290 N. Y. 1, 5; *People ex rel. Metropolitan Street Ry. Co.* v. *State Board of Tax Commissioners*, 174 N. Y. 417, 437.)

The order should be affirmed, with costs.

LEHMAN, Ch. J. (dissenting). Under the provisions of article XVIII, section 2, of the Constitution of the State of New York, the power of eminent domain may not be granted to a private corporation unless it is " regulated by law as to rents, profits, dividends and disposition of [its] property or franchises ". A corporation which can if it chooses free itself from regulations imposed upon it by law or can transfer its property to a corporation which is not regulated does not fall within the class of corporations to which the power to take private property may be granted. Nor may the power of eminent domain be granted to a city or public corporation for the purpose of taking private property to be transferred to and held thereafter by a private corporation to which the power of eminent domain could not be granted directly.

The order should be reversed.

LOUGHRAN, CONWAY and DESMOND, JJ., concur with LEWIS, J.; LEHMAN, Ch. J., dissents, in opinion in which RIPPEY, J., concurs; THACHER, J., taking no part.

Order affirmed.