Per Curiam.

This matter comes before us on the sufficiency of the complaint and the issue is the legality of a contract between the City of New York and the New York Life Insurance Company relating to the condemnation of real property between 64th and 65th Streets and 2nd and 3rd Avenues in the borough of Manhattan. The proposed condemnation would be under section 72-j of the General Municipal Law, which allows a municipal corporation to acquire by condemnation real property for the construction or operation of parking garages or parking spaces for the relief of traffic congestion, and permits the leasing of the property for the purpose to any person, firm or corporation at the highest marketable price or rental at public auction. *409 Subdivision 3 of section 72-j provides that any such lease shall contain provisions requiring the lessee to construct or establish on such real property public parking garages or public parking spaces as may be prescribed by the board of estimate or other governing body of the municipality, provisions for approval by the board of estimate or other analogous body of the rates to be charged for the use of such parking facilities, and may also contain provisions authorizing the use of such portion of the property for other commercial purposes as may be necessary to provide revenue adequate to permit the operation of the principal portion of the property for public parking garages and public parking space.
The City of New York has entered into a contract with the New York Life Insurance Company, which has under construction a large apartment house on the block between 65th and 66th Streets and 2nd and 3rd Avenues, providing that the city will condemn the property in question in this action and offer it for lease at public auction on terms specified in the contract and that the insurance company will bid for said lease for a term of fifty years an amount equal to the total condemnation costs plus annual rent of $25,000 a year and, if it is the successful bidder, will construct a garage in accordance with the specifications of the contract and proposed lease attached.
Plaintiff, a taxpayer and owner of a parcel of the land to be condemned challenges the legality of the proposed condemnation and contract on various grounds, all adding up, as plaintiff contends, to a showing that the condemnation and contract are not for the public purpose envisioned by the statute or any permissible public purpose but are for the benefit of the insurance company in enabling it to get the control and use of the block opposite its apartment building to serve the tenants and its interest as landlord and to provide an attractive outlook for the apartment house. Plaintiff contends that the specifications for the garage building to be erected and other work to be done are such that no one but the New York Life Insurance Company would be interested in the undertaking and that the specifications are rigged to meet the requirements and desires of the insurance company and to foreclose other bids. We will not discuss the various claims in detail because the matter comes before us on the complaint alone, and the propriety of several of the clauses of the contract may depend upon the evidence and showing at the trial. It is sufficient for present purposes to indicate some of the respects in which we think the complaint states a cause of action and at least raises triable issues.
*410 For one thing the contract provides that the garage building shall be only two stories in height above the surface and the entire roof shall be covered with at least four feet of earth and shall be improved with lawn, shrubs, trees, walks and landscaped areas, the southerly half of which shall be developed as a public park. The northerly half of the roof opposite the apartment building is thus reserved as a private park for the pleasant vista of the tenants of the apartment house. No purpose identifiable with a public park or a public garage appears to be served by requiring that half of the roof to be reserved and landscaped.
The plaintiff places considerable emphasis upon the fact that the contract permits the lessee to rent 30% of the ground floor and first basement space for commercial purposes not connected with garaging or parking. This gives the lessee the private allocation and disposition of a substantial portion of the building. Something of the kind is contemplated by the statute, with a view to allowing the more profitable use of some of the space for nongarage purposes to produce an income that will permit lower rates for the garage space than would otherwise be possible. We do not question the legality of this concept or its proper application, but think that there may be a question of proper proportion in this case in view of the limited size of the structure and the proportion of the space which is reserved for nongarage and nonpublic purposes.
In these respects and in other respects there is a triable issue as to whether the proposed lease is designed to attract bidders or provide the public parking facilities that would be expected from the use of the property for that purpose, or whether it reflects a compromise and pooling of the interests of the city and the insurance company to provide only a modicum of public parking facilities and otherwise give the insurance company use and control of the property for the benefit of its apartment development. We understand that the fact that a private interest may be benefited by a condemnation project does not render it illegal where the public good is enhanced (Matter of Murray v. LaGuardia, 291 N. Y. 320) but that is a relative matter and one of proper proportions and purposes. It is possible that a trial of the action may dissipate any doubts as to the legality of the arrangement, but it is also possible that a trial may reveal that the project on the whole is not authorized by sound condemnation principles and is so imbued with a private purpose and private use of the land to be condemned as to render the proposed condemnation and contract arrangements invalid.
*411 The order granting defendants’ motion to dismiss the amended complaint and the judgment entered thereon dismissing the complaint should he reversed and the motion denied and the order denying the plaintiff’s motion for an injunction should be reversed and the plaintiff’s motion granted, with costs to the plaintiff.
Peck, P. J., Glennon, Callahan and Van Voorhis, JJ., concur ; Shientag, J., concurs in, the result.
Order granting defendant’s motion to dismiss the amended complaint and the judgment entered thereon dismissing the complaint unanimously reversed and the motion denied; order denying plaintiff’s motion for an injunction unanimously reversed and the plaintiff’s motion granted, with costs to the plaintiff. Settle order on notice. [See 278 App. Div. 551.]