John J. Walsh, J.
This is a proceeding in condemnation to acquire an irregular-shaped parcel of land constituting a fraction of an acre bordering the west side of Victoria Drive in the City of Utica. Although the parcel is more than 600 feet in length, its width varies from less than 5 feet to not more than 11.21 feet for the major portion of the length.
The proceeding was brought pursuant to section 5 of article 6 of chapter 658 of the Laws of 1923 (City Charter) and an ordinance of the Common Council of the City of Utica duly adopted August 5, 1959.
The petition alleges that the parcel of land known on the City Tax Map as book 8, map 15, block 8, part of lot 3 owned by Thomas A. Damiano, defendant, “ is necessary for the widening of Victoria Drive, a duly laid out public roadway of the city of Utica, New York for the proper usage of said roadway by the citizens and taxpayers residing therein and also for the purpose of further developing the general area therein to secure more taxable properties which will inure to the benefit of the city and the citizenry as a whole. That the said city of Utica is authorized to perform the work herein under its City Charter.”
The answer of the defendant is that:
1. Defendant developed the area in question; submitted a proposed map delineating the road, known as Victoria Drive, which was approved by the City of Utica; and constructed the road in accordance with such approval at a cost of $15,000.
2. That Victoria Drive is a standard 60-foot wide roadway and there exists no need of widening for the proper usage of said roadway by the citizens and taxpayers of Utica.
3. That the plaintiff is not proceeding in good faith to condemn the property for the purpose of widening the road but for the purpose of improving and enhancing the value of the property of a private individual.
4. That the plaintiff has not acted in good faith in the attempted purchase of the property in question.
There can be little doubt that if the City of Utica had sought to condemn the land in question for the sole purpose of widening Victoria Drive, that pursuant to article VI of the Utica City Charter (L. 1923, ch. 658) the only function of this court would be to appoint commissioners to ascertain and determine the damages sustained by reason of the taking.
But since the answer has raised an issue as to whether the alleged taking is- for a “ public use ” and has questioned the good faith of the city in the proceeding it was necessary to take testimony and to make findings.
*806 The testimony adduced before the court demonstrates that sometime in 1953 the defendant in the course of developing an area in the southern part of the City of Utica adjacent to the boundary line between the City of Utica and the Town of New Hartford submitted to and secured the approval of the City of Utica for the construction of Victoria Drive as shown on a map duly filed with the City Engineer. There is no question that the said road was duly constructed by the defendant and subsequently taken over by the City of Utica as part of its street system. What is disputed is the fact that immediately to the west of the parcel of land sought to be taken in this proceeding is a rather large parcel of land belonging apparently to one Frank Cittadino, a private individual, which is “landlocked ” in the sense that there is no access to the said property within the City of Utica save across the parcel sought to be taken by the city and any access to the Cittadino property in any other direction is prevented by the presence of the Sauquoit Creek which is also the southern boundary line of the City of Utica with the Town of New Hartford.
The plaintiff contends that when defendant filed his map in 1953, it improperly showed thereon that defendant was the reputed owner of the land which we shall call for convenience herein as the “ Cittadino ” property. The City of Utica contends that this was erroneous and that if the map had shown the true facts, the proposed Victoria Drive would not have been accepted by the city from the defendant because its effect was to create a situation wherein land in the City of Utica would be denied access to city streets and be in effect “ land-locked ”, thus preventing its utilization for building purposes in the future.
As a result of this situation, the plaintiff City of Utica contends that while there is no immediate pressing requirement that Victoria Drive be widened for street purposes, the city desires to employ its right of eminent domain by taking private property for the purpose of widening Victoria Drive in order to correct the error created by a mistake of fact, which error it is claimed was the result of defendant’s representation, and, secondly, to develop more taxable property within the confines of the City of Utica.
There is thus presented the fundamental and somewhat unique question of law as to whether this taking is in fact for a “ public use ” or as defendant claims for the “ private ” use of Cittadino.
*807 While the ‘ ‘ necessity for an appropriation of lands for public use is a legislative function, and the instrumentality in which it reposes such power is the sole judge of the necessity, in lieu of any provision to the contrary” (Cuglar v. Power Auth., 4 Misc 2d 879, 896), the question of whether or not a proposed condemnation is for a public purpose is a judicial question. (Denihan Enterprises v. O’Dwyer, 302 N. Y. 451, 457.)
The courts accept as fact that which is expressed in an act or ordinance to be the legislative purpose unless from the face of the act or ordinance or from facts which may be judicially noticed, it is made to appear that the taking is not for the expressed purpose. (De Matteis v. Town of Hempstead, 286 App. Div. 1025.)
Defendant advances the argument that a private appropriation as distinguished from a ‘ ‘ public ’ ’ taking occurs when land is acquired from one person for transfer to another, or when the extinguishment of one’s property rights results solely in the enhancement of another’s.
It would, of course, violate every concept of fairness and justice to permit any governmental authority to enrich one citizen at the expense of another by taking the lands of one and transferring them to another. Neither is it proper for a municipality to employ the power of eminent domain to engage in the real estate business. (Carpenter v. City of Buffalo, 137 Misc. 618.)
But, it is likewise true, that mere incidental private benefit is insufficient to defeat a condemnation if the talcing is clearly for a “ public purpose ”. (Board of Hudson Riv. Regulating Dist. v. Fonda, Johnstown & Gloversville R. R. Co., 223 App. Div. 358, affg. 127 Misc. 866; Denihan Enterprises v. O’Dwyer, 302 N. Y. 451, supra.)
‘‘ The term ‘ public use ’ as used in connection with the right of eminent domain, is not easily defined. The Legislature has no power to take the property of one individual and pass it over to another, unless the use to which it is to be applied is for the public benefit. The question of public use is a judicial one and must be determined by the courts.” (Pocantico Water Works Co. v. Bird, 130 N. Y. 249, 258 [1891].)
Until recently, the courts have clung to a narrow concept of “ public use ”. Beginning in 1936 in New York City Housing Auth. v. Muller (270 N. Y. 333), the Court of Appeals gave its stamp of approval to a broad view of public use when it *808 authorized the exercise of the power of eminent domain to provide public housing. The court said (p. 341):
“ Whenever there arises, in the State, a condition of affairs holding a substantial menace to the public health, safety or general welfare, it becomes the duty of the government to apply whatever power is necessary and appropriate to check it.”
One of the arguments there advanced was that the public housing provided would be used only by a small number of citizens. The court said (p. 342):
“Use of a proposed structure, facility or service by everybody and anybody is one of the abandoned universal tests of a public use.”
Having opened the door to a broad concept of “ public use ”, our courts have extended the doctrine of eminent domain from public housing to slum clearance and redevelopment of substandard and blighted areas and to the providing of public parking facilities. Is there any reason to suppose that the power of eminent domain may not be extended under the general welfare power to encourage the development of private property to meet a compelling community economic need or even for the purpose of adding taxable property to the city tax rolls to alleviate the over-all burden upon the taxpayer?
As our community life becomes more complex, our cities grow and become overcrowded, the amount of available land for building purposes becomes minimal. The elimination of substandard and blighted areas, the providing of public parking locations, the construction of a municipal auditorium and recreational facilities, and the program of urban redevelopment all emphasize the need for the utilization of every available footage of land within the City of Utica for such purposes. This necessitates the employment of the broader concept of what is a public use.
Curiously, research has disclosed but one prior decision in this State which is somewhat analogous to the present proceeding, and that by the Oneida County Court. (Matter of the Town of Whitestown, 24 Misc. 150 [Oneida County Court, 1898, Dunmore, J.].)
In that ease, a proposed highway in the Town of Whitestown was of benefit to three farms, the occupants of at least two of which had no present means of egress to any highway except over the towpath of the old Erie Canal or through some other person’s private road. The issue was raised that as only the occupants of the three farms were to be benefited by the proposed highway, it was essentially a private road and not a public *809 benefit and, therefore, not a public necessity and since the law did not permit the property of one individual to be taken under the right of eminent domain for the benefit of another individual, that condemnation was improper.
Judge Duitmoee’s decision was in favor of laying out the proposed highway. He concluded that everything which tends to enlarge the resources of any considerable number of inhabitants, or which leads to the growth of towns, and the creation of new sources for the employment of private capital and labor indirectly contributes to the general welfare and to the prosperity of the whole community.
He further concluded that (p. 152) “ ‘ The state is not bound to allow its citizens to be walled in, insulated, imprisoned, but may provide them a way of deliverance. And taking so much of A’s land as may be necessary to establish a public highway, to enable B to have an outlet to the market, and to put him in communication with his neighbors, with the town, with the church, with the school, etc., is not in a just sense, although B be the person primarily and even principally benefited, the taking of A’s property for the private use of B but for the general good.’ (Bankhead v. Brown, 25 Iowa, 546.) ”
In conclusion I, therefore, find and decide that the proposed taking is for a public use and is in the public interest; and that the plaintiff has met the requirements of the Condemnation Law of the State of New York.
The defendant questions the good faith of the plaintiff in negotiating for the purchase of said land. Where, as in this case, the owner of property indicates that he is not interested in selling his property at any price, any continued negotiations as to a purchase price would be futile. The testimony adduced was to the effect that defendant stated he would spend a large sum of money to prevent condemnation and the meeting concluded with the statement by the City Engineer that he would recommend condemnation proceedings to the Common Council.
In these circumstances, I find that the plaintiff attempted in good faith to negotiate for the purchase of said land.
All of defendant’s motions are denied.
The plaintiff is entitled to a judgment in accordance with these findings. Findings of fact, conclusions of law, and judgment of condemnation may be submitted on or before the 8th day of December, 1959.
The plaintiff’s motion for immediate possession is denied without prejudice to a renewal upon the confirmation of the award of the Commissioners of Appraisers. No imperative necessity appears at the present time for such an order. No *810 work can be done until the Spring of 1960, and the defendant should be given an opportunity to take any appellate action he deems appropriate with respect to this proceeding.
I further appoint the following as Commissioners of Appraisers, viz.: Sheldon Damsky, Esq., J. Francis Thibault, Walter Eosbrook.