Louis L. Friedman, J.
In a case of first impression in New York State, brought by the plaintiffs for a judgment (a) declaring section 72-n of the General Municipal Law of the State of New York (added by L. 1958, ch. 924) as unconstitutional both on its face and as applied to the project area herein involved; (b) declaring null and void, and canceling the designation of the area as blighted; and (c) restraining the City of New York from proceeding further in connection with its project affecting said area, the defendant City of New York, hereinafter referred to as “City ”, moves under subdivision 4 of rule 106 and under rules 112 and 113 of the Buies of Civil Practice for an order (1) dismissing the complaint of the plaintiffs upon the ground that it does not state facts sufficient to constitute a cause of action; (2) judgment on the pleadings and (3) summary judgment.
The plaintiffs are owner occupants of certain residential properties located in an area known as Flatlands area of Brooklyn, which has been designated by the City Planning Commission as a predominantly vacant area, characterized by certain of the blighting conditions specified in section 72-n (supra). Under said statute, such a designation is a requisite preliminary step to the City's condemnation of said area for clearance and redevelopment purposes pursuant to the provisions thereof.
Section 72-n provides that real property, necessary for or incidental to the prevention of the development or spread of slums and blight and the promotion of the orderly growth and development of a municipality in a manner consistent with and in furtherance of the public health, safety and general welfare, through the clearance, development or redevelopment of the area for residential, commercial, community, public or other uses, or combinations of such uses (subd. 7), may be acquired by a city through condemnation or otherwise.
In the preliminary legislative finding and declaration as to the purpose of the act, it is declared “ that there exists in many *696 municipalities within this state * * * vacant areas characterized by [various] conditions ” which are described in the legislative finding. In paragraph b of subdivision 1 it is found and declared that vacant or predominantly vacant areas which are characterized by the conditions described in paragraph a of subdivision 1 of the act, or any combination thereof, with or without tangible physical blight, impair or prevent the sound growth of the community and tend to create slums and blighted areas; that such conditions depress and destroy the economic value of the areas involved, and impair sources of public revenues normally capable of being derived therefrom; that the acquisition by the city and the redevelopment of such areas constitute a necessary adjunct to the clearance and redevelopment of substandard and insanitary areas and the construction of needed public improvements in other parts of the city by providing suitable areas for relocation of persons and establishments displaced thereby (subd. 1, par. 5, a to g inclusive). Broadly stated, the city is authorized under the act to take private property bearing the conditions or characteristics, or combination thereof, set forth in paragraph a of subdivision 1, for the purposes stated in subdivision 7 of the act, hereinabove referred to.
Those conditions or characteristics, in the language of the statute, are as follows: “ (1) subdivision of land into lots of such irregular form and shape or such insufficient size, depth or width as renders them incapable of effective or economic development; (2) obsolete and poorly designed street patterns with inadequate access to such vacant or predominantly vacant areas or street widths or block sizes which are unsuitable for appropriate development of such areas; (3) unsuitable topographical, subsoil and other physical conditions impeding the development of appropriate land uses; (4) an obsolete system of utilities serving the area; (5) buildings and structures unfit for use and occupancy as a result of age, obsolesence, dilapidation, inadequate maintenance, or other factors affecting their physical condition; (6) dangerous, unsanitary or otherwise improper uses and conditions which adversely affect the public health, safety and general welfare; and (7) scattered improvements which, because of their incompatibility with an appropriate pattern of land use and streets, retard the development of the land.”
The statute further provides that the designation of an area as one coming within the purview of the act is to be made after a public hearing, and must be accompanied by a finding that the *697 area meets the requirements of the statute and by a general statement of standards for the development of the area. After acquisition by the city, the property may be sold only upon such terms as will require a purchaser or grantee thereof to clear and develop it in accordance with the final plan adopted by the city, so as to insure its use for purposes consistent with the prevention of the development or spread of slums and blight, and the promotion of the orderly growth and development of the city in the manner hereinbefore mentioned (subd. 8).
On February 18,1959 the City Planning Commission, purporting to act pursuant to the provisions of section 72-n, designated the subject area as a predominantly vacant area characterized by certain of the conditions described in paragraph a of subdivision 1 of the statute, and as an area which impairs the sound growth of the community and tends to create a blighted condition. The commission further determined that the project site should be developed for predominantly nonresidential use, and preliminarily proposed its redevelopment primarily for industrial purposes permitting light manufacturing uses. This determination was justified upon the reasons (a) that the area was appropriate for such purposes and (b) the necessity for a program of industrial redevelopment for the purpose of providing space for industries displaced by urban renewal activities and other necessary public improvements throughout the city, and to stem the tide towards the movement of such industry out of the city as well as to encourage the location of new industrial developments. On April 22, 1959 the Board of Estimate designated the Urban Renewal Board as the appropriate agency to carry out all activities authorized or required to be undertaken under section 72-n with respect to the designated project area, and on June 25,1959 the Board of Estimate approved a contract entered into between said Urban Renewal Board and an engineering and architectural consulting firm, for the preparation of a preliminary plan for the clearance and redevelopment of the area. The preliminary plan prepared under this contract was submitted by the Urban Renewal Board for approval, and after a public hearing held thereupon the City Planning Commission certified its approval thereof.
It was found in making the designation referred to above that the area in question was characterized by the following conditions of blight, described in subdivision 1 (par. a, els. [1], [2], [7]) of section 72-n: “ (1) subdivision of land into lots of such irregular form and shape or such insufficient size, depth or width as renders them incapable of effective or economic development; (2) obsolete and poorly designed street pat *698 terns with inadequate access to such vacant or predominantly vacant areas or street widths or block sizes which are unsuitable for appropriate development in such areas * * * (7) scattered improvements which, because of their incompatibility with an appropriate pattern of land use and streets, retard the development of the land.”
The Planning Commission further found that the conditions in the area had led to a high incidence of tax delinquency, resulting in an impairment of the area’s economic value; that there was a multiplicity of lot ownership constituting a barrier to economical land assembly through private action; that a study of the area revealed that residential development had been deterred because of the physical containment and isolation of the area from adjacent neigborhoods; that there was a substantial industrial section with sizable plots in part of the area and that there was a necessity for the undertaking and completion of extensive and expensive filling operations in preparing the land for residential construction. Concluding that the area cannot effectively be developed for its proper use through the normal process of private action and that municipal aid is essential in order to eliminate the so-called blight conditions, facilitate the orderly growth of the City and effect the relocation of the industrial establishments already referred to, the commission moved forward in its attempt to complete condemnation of the area involved.
Ordinarily, private property may not be taken from its owner except in the manner and for the purposes permitted by law. Plaintiffs protest that the attempted taking by the municipality under the circumstances here involved, is a violation of “ due process clauses ” of the Federal and State Constitutions, since the attempted appropriation is for neither a public use nor a public purpose for which condemnation is ordinarily permitted. In support of its instant motion, the defendant argues that the proposed taking of this land for its reclamation and redevelopment is pursuant to law (G-eneral Municipal Law, § 72-n) and that the finding by the City Planning Commission is based upon a factual determination that the area is in fact blighted in the manner described in said section 72-n, and that since the determination by said commission is legislative in nature, it is not subject to review by the courts.
In 1938 article XVIII of the State Constitution was adopted. In that article the power of eminent domain was defined and limited as it related to slum clearance and low-rent housing. Unless authorized by that article, the City may not condemn *699 private property for the purpose of clearance and redevelopment, as distinguished from other takings for well-known public uses. Plaintiffs contend that the action taken by the City herein pursuant to section 72-n of the General Municipal Law, is not authorized under the provisions of article XVIII, since there has been no finding by the City Planning Commission in this case, that there is any tangible physical blight constituting slum conditions, nor is it planned to develop the area for low-rent housing. Plaintiffs argue that the contemplated acquisition of this area by the City is so that it may be resold for private industrial use rather than for either slum clearance or low-rent housing, and that by reason thereof, said section 72-n is, therefore, as to this area, in contravention of section 10 of article XVIII of the Constitution to which reference has already been made. It is that section which authorizes and empowers the Legislature to enact all necessary laws to carry into execution the powers of the article. The limitation expressed therein seems to expressly prohibit any political or governmental body or public corporation “ to engage in any private business or enterprise other than the building and operation of low rent dwelling houses for persons of low income as defined by law, or the loaning of money to owners of existing multiple dwellings as herein provided.” Plaintiffs contend that the commission’s finding of tangible physical blight is arbitrary and capricious and violative of both the State and Federal Constitutions due process clauses.
The action is one for both declaratory judgment and for injunctive relief. While injunctive relief may not properly be sought in the present action (Kip v. New York & Harlem R. R. Co., 6 Hun 24, affd. on other grounds 67 N. Y. 227; Jo Indian Hunting & Fishing Club v. Furman, 103 Misc. 511, affd. on opinion below 186 App. Div. 922; Tanner-Gross & Co. v. City of New York, 188 App. Div. 932; cf. Vanneck Realty Corp. v. City of New York, 259 App. Div. 461), the prayer for a declaratory judgment requires separate consideration. This is so even though the constitutional questions raised herein may be dealt with in the contemplated condemnation proceeding. (Dun & Bradstreet, Inc. v. City of New York, 276 N. Y. 198; see, also, 64th St. Residences v. City of New York, 4 N Y 2d 268.) The question, therefore, of whether the City is entitled to the relief sought on the instant motions, rests upon constitutional issues, and the determination may be made initially.
If the area in question had been designated as a slum area and a finding to that effect had been made, the plaintiffs would *700 have no cause of action herein. The question which must be determined, however, is whether a finding that the area in question is a blighted area, as distinguished from a slum area, is sufficient to defeat the City’s right to condemnation. It seems to be sufficient, for the purpose of authorizing the City to act, that the area is found to be characterized by conditions, or a combination thereof, as are specified in the statute. If such conditions exist, and plaintiffs make no showing or claim that the area involved is not characterized by the conditions described in the commission’s report, then it may not be said that the usefulness of the area is unimpaired by the existence of these conditions. In the absence of evidence to show that there is no basis for the findings and determination made by the City Planning Commission, this court may not say that its determination was arbitrary, capricious or otherwise unreasonable. (Kaskell v. Impellitteri, 306 N. Y. 73, 80, cert, denied 347 U. S. 934; see, also, Cuglar v. Power Auth., 4 Misc 2d 879, affd. 4 A D 2d 801, affd. 3 N Y 2d 1006.)
By reason of the foregoing, the only question which must now be considered and determined, is whether the challenge to the constitutionality of section 72-n of the General Municipal law, under which the City is acting, has any legal merit. Section 10 of article XVIII of the Constitution expressly provides that the article is intended to extend existing powers, rather than to impose additional limitations upon the Legislature with respect to eminent domain. In any event, it is a basic principle that the power to adopt laws is solely within the prerogative of the legislative body unless that power has been limited by constitutional or other fiat or has been otherwise surrendered, and neither limitation nor surrender will be inferred unless the intention to do so is clearly indicated. (See concurring opinion of Cardozo, Ch. J., in Adler v. Deegan, 251 X. Y. 467, 490.)
Eminent domain is one of the powers inherent in the State, as sovereign, to take private property for public use. The only limitation upon the exercise of this power is that the use must in fact be public, that compensation must be made for the taking, and that due process of law must be observed. (Secombe v. Railroad Co., 23 Wall. [90 U. S.] 108.) Subject to these constitutional limitations, the State may take property at will (People v. Adirondack Ry. Co., 160 X. Y. 225, affd. 176 U. S. 335). The adoption of article XVIII in 1938 has not resulted in any expressed modification of this view by the courts. (Matter of Bronx Chamber of Commerce v. Pullen, 174 Misc. 524; *701 Matter of County of Nassau [Levittown], 207 Misc. 190; Cuglar v. Power Auth., supra.)
In Matter of New York City Housing Auth. v. Muller (270 N. T. 333, 340) the court discussed the meaning of the words ‘1 public use ’ ’ as used in proceedings involving the right of eminent domain. Speaking for the majority of the court, Chough, J., said at page 340: “Over many years and in a multitude of cases the courts have vainly attempted to define comprehensively the concept of a public use and to formulate" a universal test. They have found here as elsewhere that to formulate anything ultimate, even though it were possible, would, in an inevitably changing world, be unwise if not futile. Lacking a controlling precedent, we deal with the question as it presents itself on the facts at the present point of time.”
Continuing on at pages 341 and 342, the court further stated: “ Whenever there arises, in the State, a condition of affairs holding a substantial menace to the public health, safety or general welfare, it becomes the duty of the government to apply whatever policy is necessary and appropriate to check it. * * * Use of a proposed structure, facility or service by everybody and anybody is one of the abandoned universal tests of a public use.”
Since the decision in the above-cited case, the same broad concept has been consistently followed by other courts (Cuglar v. Power Auth., supra; Amsterdam Parking Auth. v. Trevett, 11 Misc 2d 966; City of Utica v. Damiano, 22 Misc 2d 804). In the last-cited case, the question involved was whether a parcel of real estate adjoining a city street could be taken for the purposes of street widening even though there was no immediate present necessity thereof. The facts indicated, that by going through with the street widening operation, certain land-locked property which was under private ownership, would have access to the city street and that the net result would be that more taxable property would be secured for public purposes. Holding that the taking was for public use sufficient to authorize the exercise of the power of condemnation by the city, the court said at page 808: “ Having opened the door to a broad concept of ‘ public use ’, our courts have extended the doctrine of eminent domain from public housing to slum clearance and redevelopment of substandard and blighted areas and to the providing of public parking facilities. Is there any reason to suppose that the power of eminent domain may not be extended under the general welfare power to encourage the development of private property to meet a compelling' community economic *702 need or even for the purpose of adding taxable property to the city tax rolls to alleviate the over-all burden upon the taxpayer?”
In the instant case, the avowed purpose of taking the property involved in this preceeding is to enable the relocation of commercial or industrial establishments which have been displaced by necessary slum clearance and needed public improvements, and which present a threat that by reason of their displacement, ‘they may be obliged to move out of the City of New York. Where, as in this case, the purpose for the acquisition of the land is designed to facilitate other projects such as slum clearance, which are incontrovertibly in the public interest, by providing for relocation of establishments displaced by such projects, such acquisition may be deemed under such circumstances, to constitute a needful adjunct to such projects and thus considered to be for a public purpose. (Cf. Brown v. United States, 263 U. S. 78; Matter of Watkins v. Ughetta, 273 App. Div. 969, affd. 297 N. Y. 1002; see, also, Cuglar v. Power Auth., supra.)
In addition, it is no defense to the condemnation proceedings that the properties sought to be taken are to be resold to private industry under the conditions specified in the statute. If such resale is in fact in furtherance of the public purposes specified in section 72-n and if it appears that upon completion of the project the public good will be enhanced, it is of no moment that private interests may be benefited thereby. (Matter of Murray v. La Guardia, 291 N. Y. 320.)
The statute may not be declared unconstitutional and void, unless the court is able to say that its provisions indicate a clear usurpation of a prohibited power (Murray v. La Guardia, supra). Every legislative enactment is presumed to be constitutional and supported by facts known to the legislative body, and while such presumption is not irrebuttable, the unconstitutionality must be clearly demonstrated before the statute will be condemned. (Matter of Hotel Assn. of N. Y. City v. Weaver, 3 N Y 2d 206, 216; Wiggins v. Town of Somers, 4 N Y 2d 215, 218.)
It may not be said here that the presumption of constitutionality which attaches to the statute under attack, has been overcome. Neither may it be said that it violates the provisions of the Federal Constitution. (Berman v. Parker, 348 U. S. 26.) In the Berman case, the question submitted was the validity of an Act of Congress which provided for the redevelopment of “ slum ” and “ blighted ” areas of the District of Columbia by *703 delegating to an agency the power for such purpose, to acquire and assemble real property by eminent domain and otherwise. The act also delegated the power to the same agency, to transfer or lease the land to various parties for such redevelopment purposes, after a plan of redevelopment by the Planning Commission had been completed, and for the purpose of such redevelopment in accordance with the said plan. It was provided in said act that preference in the acquisition of such land was to be given to private enterprise over public agencies. In the court below (Schneider v. District of Columbia, 117 F. Supp. 705) the act was upheld, but only upon the limited interpretation that the standards of condemnation had reference to slum areas only insofar as the public health, safety, morals and welfare would be served, and then only as legitimate objects of the police power. When the case reached the Supreme Court, they held, in affirming the decision below, with modification, that the constitutionality of the act was sustained upon the broader principle that the standards prescribed by the statute might be held valid as being adequate for executing a plan to eliminate not only slums, as narrowly defined by the court below, but also to eliminate the blighted areas which tend to produce such slums; that in addition, property might be taken for redevelopment even though such property standing by itself was innocuous and unoffending, if Congress had authorized the agency to solve the problem presented before said agency on an area rather than on a structure by structure basis. The court concluded that the act, as liberally construed, did not have the effect of taking private property in contravention of the mandates contained in the Fifth Amendment to the Federal Constitution, and held that if the legislative objective was within the authority of Congress, the culmination of such legislative objective through the exercise of eminent domain was clear, and it was for Congress to determine the means through which this objective might be realized.
. In the light of all of the foregoing, the court has come to the conclusion that the unconstitutionality of section 72-n of the Greneral Municipal Law has not been demonstrated either on the face thereof or in its application to the property here involved, and that the presumption of constitutionality which attaches to that section has not been overcome. Accordingly, the motion for judgment on the pleadings is in all respects granted. The motions for other relief, made simultaneously herein by the defendant, thereby become academic and no determination thereupon need be made.