Frederick Backer, J.
Companion motions Nos. 6 and 8 of even date of the submission of the instant motion are consolidated herewith and disposed of as herein indicated. The respective defendants have each moved for judgment dismissing the complaint pursuant to rules 106,112 and 113 of the Buies of Civil Practice.
Plaintiff, in this tort action, seeks to recover the sum of $350,000 damages against the defendants. The action is bottomed upon an alleged conspiracy by the defendants to deprive plaintiff of his property by concealing from the court (in condemnation proceedings) that it was intended to deed a certain condemned area, of which plaintiff’s property was a part, to the defendant hospital, instead of it being put to use for a public purpose. The defendant City of New York had caused a taking in condemnation, in behalf of the defendant New York City Housing Authority, of a substandard and insanitary area, in which plaintiff’s testator, and plaintiff, as executor of his estate, operated a drugstore as a statutory tenant.
Although title vested in the condemnation proceeding two and one-half years ago, and it appears that plaintiff participated in such proceedings and obtained an award therein, he now claims that the taking was illegal and that the defendants conspired to do certain illegal acts which deprived him of his property. Admittedly, public hearings were held by the Housing Commissioner, by the New York City Planning Commission, and by the Board of Estimate of the City of New York, for the purpose of determining whether or not the area to be condemned was substandard and should be rehabilitated. At such hearings no objection or opposition was voiced or presented by plaintiff or anyone else. Each of the stated agencies found that the area to be acquired by the City of New York for the New York City Housing Authority was substandard and insanitary. The petition in the proceeding before each of said bodies clearly stated that the property to be acquired was to be cleared and then sold. At no time was it stated that this land was to be used only for public housing. In this respect, I note at this time, that plaintiff’s allegations that defendants conspired to deprive him of his property are unsupported in the record before me and devoid of factual allegations in the complaint.
*651 I am satisfied after a study of the papers herein that all of the actions taken by defendants were within the contemplation of and in accordance with applicable law; that all of their acts were open and that the determinations were made after public hearings in respect thereof; that no facts are presented which in anywise establish even prima facie any conspiracy between the defendants in respect of the matters chárged by plaintiff. On the contrary, the papers and exhibits affirmatively establish the matters in relation to the condemnation to have been of public record since 1954 and that it was always intended, and stated, that after clearance of the substandard and insanitary area involved such area would be sold for redevelopment subject to appropriate restrictions for the preservation and protection of Carver Houses, a State-aided public housing project.
It is, therefore, the position of the defendants that (1) the taking was for a public use and that plaintiff’s action perforce must fall; (2) in any event, plaintiff cannot now attack the validity of the taking in view of the finality of the final decree in the condemnation proceedings, and of the finding of the Commissioner of Housing under section 71 of the Public Housing Law; (3) that plaintiff waived his rights, if any, by reason of his failure at the first opportunity he had to assert the alleged invalidity of the condemnation proceedings; (4) that plaintiff is guilty of laches; and (5) the Statute of Limitations bars the action.
Unquestionably, the acquisition of the area in condemnation proceedings and the sale and conveyance thereof to the defendant hospital were authorized under the State Constitution and the Public Housing Law. The acquisition, clearance and rehabilitation of a substandard and insanitary area, entirely separate and distinct from any ultimate use of the real property for low-rent housing for persons of low income, is a public use or purpose for which article XVIII of the State Constitution and the Public Housing Law authorize private property to be taken in condemnation proceedings. The validity of such taking does not depend upon the ultimate use of the property for the erection thereon of public housing accommodations. In the instant case, the constitutional and statutory requirements of public use and purpose were met through the acquisition and clearance of the area involved by the Housing Authority and provision for redevelopment thereof by the hospital (N. Y. Const., art. XVII I, §§ 1, 2, 8; Public Housing Law, § 3, subds. 13, 14; §§ 120, 125, 126; Matter of Murray v. La Guardia, 291 N. Y. 320; Kaskel v. Impellitteri, 306 N. Y. 73; Cannata v. City of New York, 24 Misc 2d 694).
*652 By section 1 of article XVTII of the State Constitution, it is provided: “ Subject to the provisions of this article, the legislature may provide in such manner, by such means and upon such terms and conditions as it may prescribe for low rent housing for persons of low income as defined by law, or for the clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas, or for both such purposes, and for recreational and other facilities incidental or appurtenant thereto.” (Emphasis supplied.)
In enacting the Public Housing Law, the Legislature, after declaring that slum conditions are a menace to the health, safety, morals and welfare of the citizens of the State, found (§ 2): ‘ ‘ that the clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas or the providing of adequate, safe and sanitary low rent housing accommodations in these areas and elsewhere for persons and families of low income, or both of these, are public uses and purposes for which public money may be spent and private property acquired; * * * and the necessity in the public interest for the provisions hereinafter enacted is hereby declared as a matter of legislative determination. ’ ’
In the Murray case (supra) the court found no sound basis for the objection that the condemnation of private property authorized by the Redevelopment Companies Law did not constitute a taking for a public use. It held that (p. 329): “ Such a suggestion is refuted by the language of the Constitution itself which specifically proclaims that those separate grants of power to the Legislature made in article XVIII section 1 — to provide for low rent housing or for clearance and rehabilitation of substandard areas — are ‘ public purposes.’ The question of what is a public purpose being primarily a matter of State concern (Clark v. Nash, 198 U. S. 361, 367, 368), we look to the formal statement of legislative policy which was declaratory of the purpose and led to the enactment of the Redevelopment Companies Law. That statement in the statute (§ 2) concludes as follows: ‘ * * * the necessity in the public interest for the provisions hereinafter enacted is hereby declared as a matter of legislative determination. ’ ”
Nor did it find any merit in the argument that a private corporation might ultimately reap a benefit from the exercise of the power of eminent domain, if the public good was enhanced (pp. 329, 330).
In the Kaskel ease (supra) Judge Van Voorhis, who although he dissented from the majority on the ground that there was not sufficient evidence in the record for the determination that *653 the entire area was substandard and insanitary, on the question of constitutional power to take stated at page 93 of his dissenting opinion: “ that slum clearance is in itself a public purpose, which is separate and distinct from the objects to which the land may subsequently be devoted after being redeveloped by private capital. The State Constitution does not require that slums shall be rehabilitated exclusively by reconstruction for low cost housing, which is a different public purpose that may or may not be superimposed on slum clearance (Matter of Murray v. La Guardia [291N. Y. 320], supra). Consequently, except where an applicable statute requires, the slum area may be cleared, replanned, reconstructed and rehabilitated according to any design and for any purpose which renders the area no longer substandard or insanitary.”
The recent case of Cannata v. City of New York (24 Misc 2d 694, 699, 702, supra) is directly in point. Justice Friedmau upheld the validity of section 72-n of the G-eneral Municipal Law, which authorizes the taking of predominantly vacant land characterized by certain blighting conditions and its clearance, development or redevelopment for residential, commercial, community, public or other uses. The statute upheld authorizes the city, after acquisition thereof, to sell the property for clearance and development in accordance with a plan to prevent the spread of slums and blight and to promote the orderly growth and development of the city. In rejecting the attack upon the proposed taking of the project area involved, which attack was based on the finding that the area was a blighted rather than a slum area, the court pointed out that ‘£ If the area in question had been designated as a slum area and a finding to that effect had been made, the plaintiffs would have no cause of action herein.” The court also pointed out that ££ it is no defense to the condemnation proceedings that the properties sought to be taken are to be resold to private industry under the conditions specified in the statute. If such resale is in fact in furtherance of the public purposes specified in section 72-n and if it appears upon completion of the project the public good will be enhanced, it is of no moment that private interests may be benefited thereby. (Matter of Murray v. La Guardia, 291 N. Y. 320.) ”
The acquisition of the substandard and insanitary area involved, and its sale to the hospital, for redevelopment with restrictions to preserve and protect Carver Houses was specifically authorized by Constitution and statute.
Section 126 of the Public Housing Law (condemnation of excess property) provides: “A municipality or an authority may take private property by condemnation for the purpose of *654 providing low rent housing for families of low income, or for the clearance, replanning, reconstruction and rehabilitation of areas, or for both of such purposes, and. for recreational and other facilities incidental or appurtenant thereto, but in excess of that required for public use after such purposes shall have been accomplished. An authority or municipality may improve and utilize such excess property wholly or partly for any other public purpose, or may lease or sell such excess property with restrictions to preserve and protect the project or projects. Proceedings to acquire such excess property may be brought by the authority or municipality in the same manner as for the real property required for the project and may be included in the proceedings for the acquisition of real property required for the project.”
This section follows section 8 of article XVIII of the New York State Constitution and was approved in Borek v. Golder (190 Mise. 366), in which the court said at page 393: “ In our ease, disposition by lease or sale of any excess land under restrictions protective to the housing units is within the meaning of public use. For instance, a proper restriction of commercial or industrial development near the Washington courts would preserve that neighborhood from deterioration through lack of supervision and furnish employment to the low income tenants.”
On October 3,1957 the Housing Authority’s resolution authorized a petition requesting the City of New York to institute the condemnation proceedings herein. The resolution was adopted pursuant to section 125 of the Public Housing Law and it is stated therein that acquisition of the area is necessary or required in connection with the development of Carver Houses. It further certifies and declares that the property is required for the project and that acquisition thereof is in the public interest and necessary for the public use. Under the clear language of subdivision 1 of section 125, and the existing circumstances, it constitutes therefore a conclusive determination that the taking of the area was for a public use and purpose and constitutes a bar to this action by plaintiff. Similarly, the finding of the State Housing Commissioner under section 71 of the Public Housing Law, that the project, including the area in which plaintiff’s store was located, was in conformity with a plan or undertaking for the clearance, replanning, reconstruction and rehabilitation of a substandard and insanitary area, is in the words of the statute itself (§ 2) conclusive evidence of such facts. The necessity for this finding is the requirement in the Constitution (art. XVIII, § 6) and the Public Housing Law (§ 71) that Carver Houses, a State-aided project, be in con *655 formity with a plan to clear and rehabilitate a substandard and insanitary area. The only grounds upon which the statute authorizes this finding to be set aside is upon proof of fraud or willful misfeasance by the Commissioner. This has not been presented here in any manner and, therefore, the Commissioner’s finding is conclusive upon plaintiff and the taking for a public use and the propriety of the acquisition for the purpose of resale to the hospital has been conclusively determined and established by constitutional provision and statute as aforestated.
By this action plaintiff seeks to collaterally attack the condemnation decree. He had appeared and participated in the proceedings to the extent that he received an award in the sum of $5,400 on his fixture claim. It is to be noted that at the time of the hearing of objections to the tentative decree in condemnation, which came after (emphasis mine) the filing of his notice of claim in the instant action, he there failed to take any action, raise the claims here urged or initiate any measure to set aside or vacate the condemnation decree. Moreover, it appears that plaintiff had sufficient knowledge of the matters alleged in his complaint to serve a notice of claim against the city and the Authority on April 14, 1959, which was prior to the date of the entry of the decree. His claimed grievances could have been interposed as objections to the entry of the final decree. The collateral attack here is untenable and the final decree in the condemnation proceedings, not having been set aside or vacated, is binding and conclusive upon plaintiff (Administrative Code of City of New York, § B15-24.0, subd. b; Fuhrmann v. Fanroth, 254 N. Y. 479; Matter of City of New York [Cross Bay Constr. Co.], 238 App. Div. 850, affd. 262 N. Y. 699) and is res judicata herein (Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N. Y. 304; Matter of Shea, 309 N. Y. 605; Horton v. Niagara, Lockport & Ontario Power Co., 231 App. Div. 386). In addition to the foregoing, the public hearings on the plan to convey the property to the hospital after clearance, constituted at least constructive notice thereof and plaintiff was or should have been aware, from the very inception of the proceedings he now seeks to invalidate, and certainly from the time he filed his notice of fixture claims in February, 1958, that the property would eventually be conveyed to the hospital. In fact, it appears from the papers herein, that the residents of the area used this arrangement as the basis for their attack upon the Housing Authority’s application for a writ of assistance at a hearing in the Supreme Court on May 28, 1958, at which hearing plaintiff was represented by counsel. By failure to take affirmative steps then, in respect of the claims now urged, before the *656 property vested in the city and was ultimately transferred to the hospital, plaintiff estopped himself from now raising any objections to the proceedings had (Matter of Cooper, 93 N. Y. 507).
For all of the foregoing reasons, I am persuaded that sufficient has been presented to warrant j'udgment for each of the defendants pursuant to rule 113 of the Buies of Civil Practice, and that no issue of fact is presented requiring a trial. Accordingly, the motion for summary judgment is granted and the Clerk is directed to enter judgment for all of the defendants. In light of the above disposition, there is no need for the court to pass upon the other branches of the motion brought under rules 106 and 112 of the Buies of Civil Practice.