HOUSING AUTHORITY OF THE CITY OF ATLANTA
*et al. v.* JOHNSON *et al.*

No. 18068. ARGUED JANUARY 15, 1953—DECIDED FEBRUARY 24, 1953.

*John Izard Jr., Robert B. Troutman, William K. Meadow, Spalding, Sibley, Troutman & Kelley, J. C. Savage* and *J. C. Murphy*, for plaintiffs in error.

*Willingham, Gortatowsky & Morrison, Frank H. Morrison II, Julian E. Gortatowsky* and *Wm. G. McRae*, contra.

*Louis A. Peacock, Wingate Dykes, H. B. Williams, J. Willis Conger, Henry G. Howard, Philip S. Ringel, Henry A. Stewart Sr., J. Q. Davidson, Swift, Pease, Davidson & Chapman, Dawson Kea, Ezra E. Phillips, William P. Whelchel, William R. Gignilliat Jr., Hammond Johnson Jr., J. C. Owen Jr., Wyatt, Morgan & Sumner, C. Baxter Jones, Jones, Sparks, Benton & Cork, E. S. Sell Jr., Sam J. Welsch, Mason Dunaway, Andrews & Covington, George C. Heyward, H. C. Eberhardt, R. U. Harden, William J. Buchanan* and *Newell Edenfield,* for parties at interest not parties to record.

WYATT, Justice. The record in this case discloses that the redevelopment project here proposed involves 139 acres of land and a population of 5056 persons and 818 dwelling structures

together with a number of structures now being used for business purposes. It is proposed to remove all buildings from the area, and thereafter the property "shall be used for light manufacturing or industrial use, warehousing and servicing operations, and related activities." It is further provided that, "said redevelopment plan provides for the ultimate sale or lease of the land acquired in carrying out said redevelopment project to private individuals." Such of the property as can not be otherwise acquired, is to be acquired through the use of the power of eminent domain.

The contention here is not that the law in question has not been complied with, but that the law itself is invalid and unconstitutional for a number of reasons, the main contention being that the law of 1946, supra, provides for an unlawful and illegal use of the power of eminent domain.

The right to acquire property for slum clearance and the building of rental housing for people of low income, under the provisions of the "Housing Authorities Law" (Ga. L. 1937, p. 210) was settled by a full-bench decision of this court in *Williamson* v. *Housing Authority of Augusta*, 186 *Ga.* 673 (199 S. E. 43), and has since been followed by several decisions of this court, but not without some misgivings on the part of some members of the court as now constituted, as will appear from the special concurrences in *Telford* v. *City of Gainesville*, 208 *Ga.* 56 (65 S. E. 2d, 246).

The question here presented under the provisions of the 1946 act, supra, goes much further than the provisions of the 1937 act, supra, and the decisions of this court construing the 1937 act are not controlling. In *Telford* v. *City of Gainesville*, supra, (p. 65), this court said: "The declared purpose of the Federal Housing Act and of our State Housing Authorities Law is the elimination of unsafe or insanitary dwelling accommodations and the construction of a substantially like number of safe and sanitary dwelling units for rent to persons of low income at rentals which they can afford." This approach, of necessity, includes the proposition that there exists a shortage of sanitary, suitable homes for rental to people of low income. The Redevelopment Law of 1946 is based upon no such premise and accomplishes no such purpose. The act, after providing for

the clearance of all buildings from blighted or slum areas and the construction of streets and sidewalks and like public improvements, authorizes the Housing Authority, "to make land so acquired available first to private enterprise and then, only in the event said land is not taken by private enterprise within six months after its availability, to public agencies (including sale, lease or retention by the authority itself) in accordance with the redevelopment plan." Ga. L. 1946, § 3, par. 5, p. 159. The very purpose of the act, therefore, is, after the buildings have been cleared away from the property having been acquired by eminent domain if necessary, to sell the property to private individuals.

In so far as the redevelopment plan here in question is concerned, it affirmatively appears that there is now ample housing for the people to be displaced and not one dwelling house will be erected. It follows, the object here sought is not to provide more housing for people of low income or for anyone else, and is not to relieve a housing shortage of any kind. The object is to clear away slum or blighted areas and then to have the property redeveloped by private individuals for private purposes in such manner as the city and Housing Authority determine to be best.

The power of eminent domain is to be exercised to accomplish this result. The property is to be sold to people who could have no interest in acquiring the property other than as a means to make money. If the property of one individual can be taken from another for this purpose, where does the power of eminent domain stop?

Art. 4, sec. 2, par. 1 of the Constitution of Georgia (Code, Ann., § 2-2501) provides: "The exercise of the right of eminent domain shall never be abridged, nor so construed as to prevent the General Assembly from taking property and franchises, and subjecting them to public use." It follows, the exercise of the power of eminent domain provided for under the terms of the act of 1946, supra, and sought to be applied here, if sustained must be for a "public use." The property here in question is admittedly to be used to provide industrial sites for private use and private gain. "Public use" means just what it says and means that the power of eminent domain can never

be exercised to acquire property to be used by private individuals solely for private use and private gain.

We know that some courts of other jurisdictions have held that this can be done, and others have held that it can not be done. What constitutes a "public use" under the Constitution and laws of Georgia is a question that must be decided by the courts of this State, and what some other jurisdiction may have decided is in no way binding. The question seems to be one of the few that has been left exclusively to each State to decide for itself. See Hairston *v.* Danville & Western Railway Co., 208 U. S. 598 (28 Sup. Ct. 331). It is argued that courthouses and other like public property may be sold to private parties although the property was acquired by eminent domain. This is true after the property has served its "public use," but this does not mean that eminent domain can be resorted to in order to acquire the property for the purpose of selling it to private individuals. We know of no case in Georgia authorizing the power of eminent domain to be used in order to acquire private property for the purpose of being sold to another private person for his own private use. That is exactly what is sought to be done here.

It is argued that the legislation should be sustained for the reason that the public will be benefited. Maybe so, but we can not subscribe to the doctrine that the power of eminent domain may be resorted to and a person deprived of his property every time there may be some public benefit resulting. To so hold would be to cut the very foundation from under the sacred right to own property.

One of the benefits which it is urged will result is that it would help to meet and solve the public problem of juvenile delinquency. We think juvenile delinquency exists on both sides of the railroad tracks and, if this should be sufficient reason for the use of the power of eminent domain, some of the most exclusive residential sections of our cities could be razed to make room for industrial development.

We conclude that the act of 1946, supra, provides for an unauthorized use of the power of eminent domain, and for that reason is unconstitutional. It follows, the judgment of the court below overruling the general demurrer was not error.

*Judgment affirmed. All the Justices concur except Atkinson, P. J., not participating. Duckworth, C. J., concurs specially.*

DUCKWORTH, Chief Justice, concurring specially. I concur in the judgment and with all that is said in the opinion except what I believe is an implication that overcrowded and insanitary residences are not a major contributing factor to juvenile delinquency. And if, in this case, such conditions were shown to exist and the statute in question provided for the clearance of such slums by taking the property for public rather than private use, I would consider the exercise of the power of eminent domain entirely constitutional.