20373. BAILEY *v.* HOUSING AUTHORITY OF CITY OF BAINBRIDGE *et al.*

HAWKINS, Justice. The petition of Stella Fredonia Brockett Bailey, against the Housing Authority of the City of Bainbridge and the City of Bainbridge, alleges that she is a citizen and taxpayer and is the owner of described real estate lying within the City of Bainbridge and the Pear Orchard Redevelopment area, and sets out the steps taken by the Housing Authority preparatory to carrying out the Pear Orchard Redevelopment project. The various features of the redevelopment plan and the resolutions of the Housing Authority and the City of Bainbridge are summarized, and the plaintiff alleges that the redevelopment area contains houses which are not slums and contains a few commercial buildings, as well as vacant land; but alleges, in paragraph 13 of the petition, that the acquisition of all said properties is necessary to remove or prevent the spread of slums in the City of Bainbridge. The plaintiff makes certain allegations with reference to Federal assistance already rendered to the Housing Authority and expected to be rendered in the accomplishment of the project, and that the Federal Government will provide all funds necessary to carry out the project, provided the local

authorities make provision to pay one-third of the ultimate loss from the project. She alleges that the Housing Authority has undertaken to condemn her property, attaching the condemnation notice as an exhibit to her petition, and that, unless enjoined, the Housing Authority will proceed to carry out the redevelopment program, including the taking of the plaintiff's property, and that the City of Bainbridge will pay over to the Housing Authority public funds to be used in the accomplishment of the project. The petition alleges that the plaintiff's property is located in a slum area, which has been selected for a redevelopment project; that the redevelopment plan, which has been duly prepared and approved, indicates that the Housing Authority will acquire fee-simple title to all of the land and improvements thereon within the redevelopment area; that it will remove all existing structures in the area; that certain streets will be closed and new streets created; and that thereafter the entire area will be promptly sold; that slightly more than one-half of the area will be sold to private enterprise under reasonable competitive bidding procedures, and the balance of the area will be sold to the city for use as a public cemetery and public park. It is not contended that the defendants have failed to comply with the terms of the Urban Redevelopment Law (Ga. L. 1955, p. 354); but, as grounds for the equitable relief prayed, she alleges that this law, and the acts taken and proposed to be taken by the defendants thereunder are null and void, because of the alleged unconstitutionality of the Urban Redevelopment Law, it being alleged that it violates described provisions of the State and Federal Constitutions. To this petition the defendants interposed their general demurrers, which were sustained by the trial court and the petition was dismissed. To this judgment the plaintiff excepts. In the brief of counsel for the plaintiff it is stated that the basic and fundamental question presented by the various constitutional attacks is whether such a taking of private property as is here proposed is for a "public use" within the meaning of the Constitution of Georgia, the plaintiff contending that the Urban Redevelopment Law and the Pear Orchard Redevelopment plan proposed thereunder are unconstitutional for the reason that they provide for the taking of private property for a private use, and not for public purposes. *Held:*

History teaches us that one of the first steps necessary to be

taken in the establishment of a totalitarian form of government is to abolish the right of private ownership of property. One of the most sacred and cherished rights of the citizens of this State, handed down to us by our forefathers, and until recently protected by the Constitution and held inviolate by the courts of our State, was the right of private ownership of property, subject to be taken by the State or its authority for public purposes only upon just and adequate compensation being first paid. Such was the holding of this court in *Housing Authority of City of Atlanta* v. *Johnson,* 209 *Ga.* 560 (74 S. E. 2d 891), in dealing with a question similar to that presented by the present record. However, as pointed out by this court in *Plumb* v. *Christie,* 103 *Ga.* 686, 693 (30 S. E. 759, 42 L.R.A. 181): "In all independent States and nations absolute power rests somewhere. In this country it is neither lodged with the executive nor the legislative nor the judicial branches of the government, nor with all combined; but sovereignty rests with the people of the several States. The ultimate source of legislative power is traceable to them; and in their sovereign capacity they have a right to frame laws for their own government, and for the regulation of human conduct on all matters over which exclusive power has not by them been delegated to the Federal government. Acting in their organized capacity, and under the forms of existing laws, they can rend asunder all bonds that are thrown as restraint around individual action, unbridle liberty, and make license as free as the winds of heaven, and as wild as the waves of the sea. They can, on the other hand, so frame their organic and statute law as to place upon their own necks a yoke as galling as ever serf carried under the edict of a despot. It is eminently in this sense that we live under a free government, which simply means a government created by the people, and which they are absolutely free to change or modify at their pleasure. It is worse than useless then for the courts to undertake to pass upon the validity of a statute by an inquiry as to whether or not it is just or oppressive. To enter into such a field of investigation would be like embarking upon the sea without rudder or compass. A law is not necessarily unconstitutional or otherwise invalid because it is unjust. We live under a constitutional government, and written laws; and the courts can enforce only such rights as they protect, and remedy such wrongs as they redress." Following our de-

cision in the *Johnson* case (209 *Ga.* 560), supra, in which we held that the acquisition of property for an urban redevelopment project and its sale to private persons for private use did not amount to a "public use" of the property, and that the Redevelopment Law of 1946 (Ga. L. 1946, p. 157) provided for an unauthorized use of the power of eminent domain, and was, for that reason, unconstitutional, the General Assembly, at its November session in 1953 (Ga. L. 1953, Nov.-Dec. Sess., p. 538), adopted a resolution proposing that Article XVI be added to the Constitution, and on November 2, 1954, the people of Georgia, by more than a two-to-one margin, ratified that constitutional amendment, which is as follows: "The General Assembly may provide by law that any city or town, or any housing authority now or hereafter established, may undertake and carry out slum clearance and redevelopment work, including the acquisition and clearance of areas which are predominantly slum or blighted areas, the preparation of such areas for re-use, and the sale or other disposition of such areas to private enterprise for private uses or to public bodies for public uses. Any such work shall constitute a governmental function undertaken for public purposes, and the powers of taxation and eminent domain may be exercised and public funds expended in furtherance thereof." At its 1955 session, the General Assembly, in accordance with the express power granted and conferred by the people acting in their sovereign capacity by the ratification of Article XVI of the Constitution of 1945 (Code, Ann., § 2-8501), adopted the Urban Redevelopment Law now under attack (Ga. L. 1955, p. 354), and under which the defendants are proceeding. By that constitutional amendment and the act in pursuance thereof, the people of this State have declared that the taking of private property as is here proposed is for a "public purpose," and that powers of taxation and eminent domain may be exercised and public funds expended in furtherance thereof, and by that this court is bound. Thus, the Urban Redevelopment Law is expressly authorized by the Constitution as amended, and it and the acts proposed to be taken thereunder, and in conformity therewith, are not unconstitutional for any reason assigned. *Hammond* v. *Clark,* 136 *Ga.* 313 (71 S. E. 479, 38 L.R.A. (NS) 77); *Clements* v. *Powell,* 155 *Ga.* 278 (116 S. E. 624); Hairston *v.* Danville &c. Ry. Co., 208 U. S. 598 (28 S. Ct. 331, 52 L. ed. 637); Berman *v.* Parker, 348 U. S. 26

(75 S. Ct. 98, 99 L. ed. 27). The trial court properly sustained the general demurrers and dismissed the plaintiff's petition. *Judgment affirmed. All the Justices concur.*

ARGUED FEBRUARY 9, 1959—DECIDED MARCH 6, 1959.

*Earle B. May, Jr.,* for plaintiff in error.

*J. Willis Conger, Spalding, Sibley, Troutman, Meadow & Smith, John Izard, Jr.,* contra.