REDEVELOPMENT COMMISSION OF GREENSBORO AND CITY OF
GREENSBORO v. SECURITY NATIONAL BANK OF GREENSBORO,
AS EXECUTOR AND TRUSTEE UNDER THE WILL OF JACK MILTON, DECEASED.

(Filed 10 June, 1960.)

**1. Appeal and Error § 49—**

Where there are no exceptions to the court's findings of fact, it will
be presumed that the findings are supported by competent evidence and
the findings are binding on appeal.

**2. Eminent Domain § 1—**

Private property may be taken under the power of eminent domain
only for a public use and then only upon the payment of just compensa-
tion.

**3. Eminent Domain § 3—**

When the facts are determined, what is a public use is a question of
law for the court.

**4. Same—**

If the condemnation of land is for a public purpose, the General As-
sembly may select the agency to exercise the power of eminent domain
and the method by which the public purpose is to be accomplished.

**5. Same: Constitutional Law § 24—**

The condemnation of blighted and slum areas within a municipality
for redevelopment under safeguards to prevent such areas from revert-
ing to slum areas is in the interest of the public health, safety, morals
and welfare, and therefore such condemnation is for a public use and
is not a taking of private property in violation of Art. I, Sec. 1, or Art.
I, Sec. 17, of the Constitution of North Carolina.

**6. Same—**

The fact that a municipal redevelopment commission may exchange,
sell or transfer to private persons slum property condemned by it for
redevelopment does not affect the question of whether the taking is for
a public use, since the statute provides safeguards in the use and con-
trol of the land by the private developer to prevent the area from again
becoming a blighted area, and the sale or transfer to the redeveloper
is merely incidental or collateral to the primary purpose of clearing the
slum area in the interest of the public health, safety, morals and welfare.

**7. Constitutional Law § 7—**

While the General Assembly may not delegate the power to make law
except as authorized by the Constitution, it may delegate to a state
agency the power to find facts or to determine the existence or non-ex-
istence of a factual situation or condition upon which the operation of
a law is made to depend, provided adequate standards are set forth to
guide the agency in so doing. Constitution of North Carolina, Art. II,
Sec. 1.

**8. Statutes § 5d—**

Sections of a statute and statutes *in pari materia* must be construed together.

**9. Constitutional Law § 7: Municipal Corporations § 4—**

G.S. 160, Art. 34, authorizing each municipality as therein defined to create a redevelopment commission upon its findings that a blighted area exists in such municipality and that the redevelopment of such area is necessary in the interest of the public health, safety, morals or welfare, is a constitutional delegation of power to each such municipality, since the statute defines a "blighted area" with particularity (G.S. 160-456(q)) and therefore provides adequate standards to guide each municipality in determining whether an area exists within its limits which requires redevelopment in the interest of the public health, safety, morals or welfare.

**10. Constitutional Law § 19: Municipal Corporations § 4—**

The power given a municipal redevelopment commission to sell or transfer lands theretofore condemned by it does not violate the provisions of Art. I, Sec. 7, of the Constitution of North Carolina proscribing exclusive or separate emoluments or privileges except in consideration of public services, since the Act provides that unless the lands are sold or should be transferred to the municipality or other public body, they should be sold only to the highest responsible bidder after public advertisement and that all bids may be rejected, G.S. 160-464(b), (c), and, further, a sale of the land is merely incidental or ancillary to the primary purpose of the Act to eradicate slum areas.

**11. Constitutional Law § 6—**

If a statute is not proscribed by any section of our State Constitution, the wisdom of its enactment is a legislative and not a judicial question, since the General Assembly has the right to experiment with any modes of dealing with old evils unless prevented by the Constitution.

**12. Municipal Corporations § 4: Taxation § 5—**

Where funds expended by a municipal redevelopment commission under provisions of the Urban Redevelopment Law are not derived from tax revenues, the provisions of Art. V, Sec. 3, of the Constitution of North Carolina are not applicable.

BOBBITT, J., concurring.

HIGGINS, J., dissenting.

APPEAL by respondent from *Preyer, J.,* 15 February 1960 Civil Term, of GUILFORD — Greensboro Division.

Special proceeding instituted by petitioners, Redevelopment Commission of Greensboro and the city of Greensboro, before the clerk of the Superior Court of Guilford County for the condemnation under the power of eminent domain provided for in G.S. 40-11 *et seq.,* Condemnation Proceedings, and in G.S. Chapter 160, Article 37, known as the Urban Redevelopment Law, of certain land, which is a part

of the *corpus* of the testamentary trusts created by the last will and testament of Jack Milton, deceased, — the last will and testament of Jack Milton, deceased, appointed respondent executor of his will and testamentary trustee of his estate —, heard before Judge Preyer on appeal by respondent from orders of the clerk of the Superior Court of Guilford County appointing commissioners of appraisal, and affirming their report assessing damages for the taking of the land.

Petitioners and respondent, pursuant to G.S. 1-184—1-185, waived trial by jury, and agreed that Judge Preyer might answer the issue as to damages for the taking of the land in the sum of $15,600.00, might find the facts, make conclusions of law, and render judgment thereon.

Judge Preyer's judgment is as follows:

## FINDINGS OF FACT

"1. That the city of Greensboro is a Municipal Corporation having and exercising the rights, power and authority conferred by Chapter 37 of the Private Laws of 1923, as Amended, and by applicable General Statutes of North Carolina.

"2. That after due notice, by proper ordinance designated, 'Chapter 75, Redevelopment Commission of Greensboro,' passed by the City Council of the city of Greensboro on the 15th day of October 1951, as shown by petitioners' Exhibit A, the City Council of the city of Greensboro found as a fact that blighted and slum areas existed within the city, and thereafter certified said ordinance to the Secretary of State of North Carolina. That thereafter the Redevelopment Commission of Greensboro was created under G.S. 160-454, *et seq.,* and a certificate of incorporation was issued to the Redevelopment Commission of Greensboro by the Secretary of State on the 23rd day of October 1951, as shown by petitioners' Exhibit B; and that thereafter the Redevelopment Commission of Greensboro was duly organized by the adoption of by-laws and the election of officers, in accordance with Statute.

"3. That thereafter, pursuant to statute, the Greensboro Planning Board, by resolution duly adopted, found that there were blighted and slum areas within the city of Greensboro and designated a section of Greensboro, described in Exhibit E of the Petition, as a blighted and slum area and a redevelopment area; that petitioners' Exhibit D is a map of said area; that the findings of the Greensboro Planning Board were duly approved by the City Council of the city of Greensboro, as shown by petitioners' Exhibit E.

"4. That thereafter, pursuant to the provisions and requirements

of the statutes, the Redevelopment Commission determined that the section known as Area No. 1, a part of said area being known as the Cumberland Project, was most in need of redevelopment, and made certain studies and found certain facts in the manner prescribed by statute, and prepared a plan of redevelopment for the Cumberland Project. That said study and plan produced, among other things, maps showing the present existing use of the area, maps showing the proposed use of the area upon redevelopment, standards of population density, land coverage and building densities, a preliminary site plan of the area, proposed changes in zoning ordinances and maps, maps showing changes in street lay-outs and levels, a statement of the estimated cost and method of financing of the acquisition of the redevelopment area, a statement of such continuing controls as are deemed necessary to effectuate the purpose of the statutes authorizing redevelopment and slum clearance, a statement of the feasible method proposed for the relocation of families displaced in said area, all as shown by petitioners' Exhibits F through M, inclusive. That thereafter said plan was submitted to the Greensboro Planning Board, which Board reaffirmed the fact that said area was a blighted and slum area and approved the plan of redevelopment for the Cumberland Project, as shown by petitioners' Exhibits O and P; and that subsequently thereto the City Council passed a resolution calling for a public hearing on said matter, which was duly held; and by proper resolution subsequently thereto the City Council approved the redevelopment and slum clearance plan as submitted, as shown by petitioners' Exhibits Q and R.

"5. That the respondent is the owner of the land described in the petition and the subject of this eminent domain proceeding; that the property of the respondent, as set forth in the petition, is within the area of the Cumberland Project, and is an integral part of the plan of redevelopment. That the acquisition of said land is necessary to accomplish the plan of redevelopment, and that, if acquired, the city of Greensboro and the Redevelopment Commission of Greensboro will, in good faith, carry out the plan of redevelopment above specified. That the petitioners have attempted to acquire title to said land by purchase, but were unable to do so, due to the fact that the respondent contended the land had more value than had been given it in the appraisal by the petitioners; and that certain constitutional questions had arisen on the basis of which the respondent denies the right of the Redevelopment Commission of Greensboro to acquire and hold title to real estate.

"6. That the area described in the petition, known as the Cumberland Project, in which the land of the respondent is located, is hereby found to be a blighted and slum area as defined by G.S. 160-456(q). That said area is found by the Court to be largely residential, in which the structures are depreciated, dilapidated, deteriorated and substandard in all respects, without necessary provisions for ventilation, light, sanitation and inside plumbing; that throughout the area there exists an unusually high density of population with the entailed overcrowding, unsanitary and unsafe conditions, which constitute an abnormal hazard to the health, safety and welfare of the community; that the existence of such ills is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, crime, and fire hazards, and is detrimental to the public health, safety, morals and welfare of the citizens of the city of Greensboro; that more than 68% of the houses and structures in said area are substandard insofar as their condition relates to the factors above enumerated; and that up to 89% of all structural units in the area have one or more of the elements of deterioration and dilapidation set forth above.

"7. That under the plan of redevelopment the city of Greensboro has appropriated and paid to the Redevelopment Commission of Greensboro sums of money, and the city plans and anticipates the appropriation and payment to the redevelopment Commission of Greensboro further outlays of cash, improvements, etc.; that the money heretofore appropriated and paid to the Redevelopment Commission of Greensboro has come from sources of income to the city of Greensboro other than from *ad valorem* tax revenue. That the city of Greensboro will make additional appropriations in the future and pay additional sums to the Redevelopment Commission of Greensboro for the furtherance of the redevelopment plan, and that the funds for said future appropriations will be derived from funds received by the city other than from *ad valorem* tax revenue.

"8. That the city of Greensboro, in compliance with the Order of Confirmation of the Report of the Commissioners of Appraisal, signed February 10, 1960, by the clerk of the Superior Court of Guilford County, has paid into Court the sum of $15,500.00., this being the figure arrived at by the Commissioners of Appraisal as damage to the respondent for the taking of its property; and that this sum was appropriated and paid by the city of Greensboro from income received by the city from sources other than *ad valorem* tax revenue.

"9. That petitioners' Exhibits T(1) through T(13), being photographs of the Cumberland Project described in the petition and offered in evidence, are fair portrayals of the actual conditions as now exist within the area.

"10. That all meetings, hearings, and notices given and held by the City Council, the Greensboro Planning Board, and the Redevelopment Commission of Greensboro, in compliance with the statutory procedural requirements for the creation of the Redevelopment Commission of Greensboro, and the accomplishment of the redevelopment plan, were properly given and held; and that all statutory requirements have been met and complied with as to giving of notices, holding of public meetings, and passing of ordinances and resolutions.

"11. That the conditions existing in the Cumberland Project area cannot practicably be eliminated by the exercise of the police power of the city of Greensboro, nor alleviated by the anticipated efforts or intervention of private enterprise.

And upon the foregoing Findings of Fact the Court makes the following—

## CONCLUSIONS OF LAW

"1. That this condemnation proceeding is properly brought under G.S. 40-11, *et seq.*

"2. That the taking of respondent's property in this proceeding by eminent domain is a taking for a public purpose and use, and that such taking is not in violation of Article I, Section 1, or Article I, Section 17, of the Constitution of the State of North Carolina, but is a taking 'by the law of the land.'

"3. That the Urban Redevelopment Law, Chapter 160, Subchapter 7, Article 37, of the General Statutes of North Carolina, is not an unlawful delegation of legislative power and authority to the Redevelopment Commission of Greensboro, and does not violate Article II, Section 1, of the Constitution of North Carolina, for that said Act specifically, and in detail, sets forth standards and guidances for the creation of redevelopment agencies and the pursuit of their activities thereunder, leaving only to the municipality and the local redevelopment agency the determination of facts which bring the law into operation.

"4. That Chapter 160, Subchapter 7, Article 37, of the General Statutes of North Carolina does not confer upon nor authorize the Redevelopment Commission of Greensboro or the city of Greensboro the power to grant, nor does the plan of redevelopment as set forth in the petition in pursuance of said statute

grant, exclusive and separate emoluments and privileges to persons or sets of persons in violation of Article I, Section 7, of the Constitution of North Carolina.

"5. In the light of the evidence to the effect that only funds derived from sources other than *ad valorem* tax revenue by the city of Greensboro have been used, appropriated, or spent by the city of Greensboro and the Redevelopment Commission of Greensboro, and that sums in the future will be appropriated by the city of Greensboro to the Redevelopment Commission from sources other than *ad valorem* tax revenue, the provisions of Article V, Section 3, of the Constitution of North Carolina are not applicable in the determination of this cause.

"6. That as a matter of law the redevelopment area described in the petition as the Cumberland Project is a blighted and slum area within the meaning of G.S. 160-454, *et seq.;* and that by reason of said blighted and slum condition in the area the redevelopment of such area, under the plan of redevelopment as set forth in the petition, is necessary in the interest of the public health, safety, morals and welfare of the residents of the city of Greensboro.

UPON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW IT IS ORDERED, ADJUDGED AND DECREED:

"1. That petitioner Redevelopment Commission of Greensboro is entitled to take, and all of the right, title and interest of the respondent in and to, the real property described in paragraph 5 of the petition, is hereby conveyed to said commission.

"2. That Respondent have and recover of Petitioners, as damages for the taking of said property, the sum of $15,600.00.

"3. That, the sum of $15,600.00 having been paid into Court by the city of Greensboro for the use and benefit of the Respondent, the Redevelopment Commission of Greensboro is authorized and empowered to enter into possession of the real property described in paragraph 5 of the petition forthwith.

"4. That counsel fees in the sum of $2,000.00 are hereby awarded to Stern & Rendleman, attorneys for the respondent, pursuant to G.S. 160-456, Subsection (q), which fee is charged as a part of the costs in this proceeding.

"5. That this judgment be recorded in the office of the Register of Deeds of Guilford County as a muniment of title in Redevelopment Commission of Greensboro. Let the costs be taxed against the petitioners."

From the judgment respondent appeals.

*J. Archie Cannon, Jr., and Harry Rockwell for Redevelopment Commission of Greensboro, plaintiffs, appellees.*
*Harper J. Elam, III, for the city of Greensboro, plaintiffs, appellees.*
*Stern & Rendleman; By John L. Rendleman for respondent, appellant.*
*Claude V. Jones, attorney for city of Durham.*
*Daniel K. Edwards and Robinson O. Everett for the Redevelopment Commission of the city of Durham, as amici curiae.*
*Dickson Phillips for Urban Redevelopment Commission of the city of Laurinburg, as amicus curiae.*
*Hogue and Hogue; By C. D. Hogue, Jr., for the Redevelopment Commission of the city of Wilmington, as amici curiae.*
*Weston P. Hatfield for the Redevelopment Commission of the city of Winston-Salem, as amicus curiae.*
*Cochran, McCleneghan & Miller; By Thomas C. Creasy, Jr., for the Redevelopment Commission of the city of Charlotte, as amici curiae.*
*Bunn, Hatch, Little & Bunn; By James C. Little for the Redevelopment Commission of the city of Raleigh, as amici curiae.*

PARKER, J. Respondent has no exceptions to Judge Preyer's findings of fact. Therefore, it will be presumed that they are supported by competent evidence, and are binding on appeal. *Tanner v. Ervin,* 250 N.C. 602, 109 S.E. 2d 460.

Respondent has excepted to Judge Preyer's second, third, fourth and fifth conclusions of law, to this part of his decree, to wit, "Petitioner Redevelopment Commission of Greensboro is entitled to take, and all of the right, title and interest of the respondent in and to, the real property described in paragraph 5 of the petition, is hereby conveyed to said commission," and to the judgment.

Respondent's first exception is to Judge Preyer's second conclusion of law that the taking of respondent's land in this proceeding under the power of eminent domain is a taking for a public purpose and use, and is not in violation of Article I, Section 1, or of Article I, Section 17, of the North Carolina Constitution.

The relevant part of Article I, Section 1, of the North Carolina Constitution is "That we hold it to be self-evident that all persons . . . are endowed by their Creator with certain inalienable rights; that among these are . . . the enjoyment of the fruits of their own labor." The pertinent part of Article I, Section 17, of the North Carolina Constitution is, "No person ought to be . . . in any manner deprived of his . . . property, but by the law of the land."

In the exercise of the power of eminent domain, private property can be taken only for a public purpose, or more properly speaking a public use, and upon the payment of just compensation. *Charlotte v. Heath*, 226 N.C. 750, 40 S.E. 2d 600; *Johnston v. Rankin*, 70 N.C. 550. This principle is so grounded in natural equity that it has never been denied to be an essential part of "the law of the land" within the meaning of Article I, Section 17, of the North Carolina Constitution. *Eller v. Board of Education*, 242 N.C. 584, 89 S.E. 2d 144.

When the facts are determined, what is a public purpose, or more properly speaking a public use, is a question of law for the court. *Charlotte v. Heath, supra; Yarborough v. Park Commission*, 196 N.C. 284, 145 S.E. 563; *Stratford v. Greensboro*, 124 N.C. 127, 32 S.E. 394.

The question of law is distinct and clear. This Court said in *Yarborough v. Park Commission*, ". . . it is settled by our decisions . . . that if a particular use is public the expediency or necessity for establishing it is exclusively for the Legislature." If the redevelopment project here is for "a public use," the grant of the power of eminent domain in G.S. Chapter 160, Article 37, Urban Redevelopment Law, is a clear and valid exercise of legislative power, for the power of eminent domain is merely the means to the end. *Berman v. Parker*, 348 U.S. 26, 99 L. Ed. 27.

The main contention of respondent on its first exception is that the taking of property by the power of eminent domain under G.S. Chapter 160, Article 37, is not for a public use permitted under Article I, Section 1, or Article I, Section 17, of the North Carolina Constitution, but is a taking of private property for a private use, because under G.S. 160-464(a) the Redevelopment Commission is empowered to "sell, exchange or otherwise transfer real property or any interest therein in a redevelopment project area to any redeveloper for residential, recreational, commercial, industrial or other uses or for public use in accordance with the redevelopment plan, subject to such covenants, conditions and restrictions as may be deemed to be in the public interest or to carry out the purposes of this article; provided, that such sale, exchange or other transfer, and any agreement relating thereto, may be made only after, or subject to, the approval of the redevelopment plan by the governing body of the municipality and after public notice and award as hereinafter specified in subsection (b)."

G.S. 160-464(d) provides: "The contract between the commission and a redeveloper shall contain, without being limited to the following provisions: (1) Plans prepared by the redeveloper or otherwise

and other such documents as may be required to show the type, material, structure and general character of the redevelopment project; (2) A statement of the use intended for each part of the project; (3) A guaranty of completion of the redevelopment project within specified time limits; (4) The amount, if known, of the consideration to be paid; (5) Adequate safeguards for proper maintenance of all parts of the project; (6) Such other continuing controls as may be deemed necessary to effectuate the purposes of this article."

G.S. 160-464(e) states: "Any deed to a redeveloper in furtherance of a redevelopment contract shall be executed in the name of the commission, by its proper officers, and shall contain in addition to all other provisions, such conditions, restrictions and provisions as the commission may deem desirable to run with the land in order to effectuate the purposes of this article."

This contention of respondent that the taking of its property is for private use misconceives the nature and extent of the public purpose or public use which is the subject of the Urban Redevelopment statute. The primary purpose of the taking is the eradication of "blighted areas," the reconstruction and rehabilitation of such areas, and the adaption of them for uses which will prevent a recurrence of the blighted conditions. This is lucidly stated in G.S. 160-455, as follows: "FINDINGS AND DECLARATION OF POLICY.—It is hereby determined and declared as a matter of legislative finding: (a) That there exist in urban communities in this State blighted areas as defined herein. (b) That such areas are economic or social liabilities, inimical and injurious to the public health, safety, morals and welfare of the residents of the State, harmful to the social and economic well-being of the entire communities in which they exist, depreciating values therein, reducing tax revenues, and thereby depreciating further the general community-wide values. (c) That the existence of such areas contributes substantially and increasingly to the spread of disease and crime, necessitating excessive and disproportionate expenditures of public funds for the preservation of the public health and safety, for crime prevention, correction, prosecution, punishment and the treatment of juvenile delinquency and for the maintenance of adequate police, fire and accident protection and other public services and facilities, constitutes an economic and social liability, substantially impairs or arrests the sound growth of communities. (d) That the foregoing conditions are beyond remedy or control entirely by regulatory processes in the exercise of the police power and cannot be effectively dealt with by private enterprise under existing law without the additional aids herein granted.

(e) That the acquisition, preparation, sale, sound replanning, and redevelopment of such areas in accordance with sound and approved plans for their redevelopment will promote the public health, safety, convenience and welfare. Therefore, it is hereby declared to be the policy of the State of North Carolina to promote the health, safety, and welfare of the inhabitants thereof by the creation of bodies corporate and politic to be known as redevelopment commissions, which shall exist and operate for the public purposes of acquiring and replanning such areas and of holding or disposing of them in such manner that they shall become available for economically and socially sound redevelopment. Such purposes are hereby declared to be public uses for which public money may be spent, and private property may be acquired by the exercise of the power of eminent domain."

In *Wells v. Housing Authority*, 213 N.C. 744, 197 S.E. 693, we held that the eradication of slum areas in cities and towns of the State having a population of more than fifteen thousand inhabitants, and the adaptation of the property to a low-cost housing project to be leased to tenants was a public use. See also *Cox v. Kinston*, 217 N.C. 391, 8 S.E. 2d 252. The General Assembly 1941, Chapter 78, amended the original Housing Authorities Law so as to make it apply to "urban and rural areas throughout the State." In *Mallard v. Housing Authority*, 221 N.C. 334, 20 S.E. 2d 281, we held that the *Wells* and *Cox* cases were controlling and the amendment to the original law applicable to rural communities was a public use.

Respondent contends that the *Wells, Cox* and *Mallard* cases are no authority here, for the reason that under the Housing Authorities Law title to the property taken remains in the Housing Authority, and under the Urban Redevelopment Law the land taken, or any interest therein, may be sold, exchanged or otherwise transferred to a redeveloper.

The Urban Redevelopment Law, as above set forth, provides that the land taken, or any interest therein, may be sold, exchanged or otherwise transferred to a redeveloper, "subject to such covenants, conditions and restrictions as may be deemed to be in the public interest or to carry out the purposes of this article," and provides further that such sale, exchange or other transfer may be made only after, or subject to, the approval of the redevelopment plan by the governing body of the municipality and after public notice. The Urban Redevelopment Law further provides that the contract between the Redevelopment Commission and the redeveloper (G.S. 160-464(d)) shall contain provisions that the redeveloper shall re-

develop the property not in accordance with his own desires, but in accordance with the redevelopment plan so as to prevent for the foreseeable future a recurrence of the blighted area.

In our opinion, and we so hold, upon the facts established by Judge Preyer's findings of fact the taking of respondent's land was for a public use. This is in accord with the overwhelming weight of opinion. Anno. 44 A.L.R. 2d 1420, *et seq.*

Once the public purpose of the Urban Redevelopment Law has been established, the means of executing the project are for the General Assembly, and the General Assembly alone to determine. The public purpose may be as well or better served by private enterprise with such continuing restrictions and conditions placed by contract upon the redeveloper to effectuate the purposes of the Urban Redevelopment Law, as by a department of the State — and so the General Assembly apparently concluded by placing such safeguards around the redeveloper. We cannot say that the conclusion of the General Assembly is erroneous. *Berman v. Parker, supra.* The sale or transfer to the redeveloper is merely incidental or collateral to the primary purpose of the Urban Redevelopment Law.

In *Hunter v. Norfolk Redevelopment & Housing Authority,* 195 Va. 326, 78 S.E. 2d 893, the Supreme Court of Appeals held that Housing Authorities Law, Code, 1950, Sections 36-1 to 36-55, including provisions therein for redevelopment of blighted areas and acquisition of land through condemnation for such purpose does not violate any constitutional provision, even though authority is empowered by statute to make part of the land thus acquired available to private enterprise for redevelopment.

In *Velishka v. Nashua,* 99 N.H. 161, 106 A. 2d 571, 44 A.L.R. 2d 1406, (1954), it was held that a statute providing for the redevelopment of blighted areas is not rendered an improper exercise of the power of eminent domain by a provision making the land available for sale or lease to private, as well as public, agencies, subject to conditions consistent with the redevelopment plan. The Court said: "The act is specifically challenged because it allows the Authority to make the land in a redevelopment project available for sale or lease to public or private agencies. It is contended that this is an improper exercise of the power of eminent domain, even if the original taking may be for a public purpose because the ultimate disposition of the property is not for a public use. The same contention was made and answered in *Gohld Realty Co. v. City of Hartford,* 104 A2d 365, 369: 'The purpose of the act is not only to remove slums and blighted areas but also to prevent the redeveloped areas

from reverting to their former status . . . .This is accomplished by requiring as a condition of sales and leases of portions of the area to private persons that the property ("be developed or redeveloped for the purposes specified in such plan." Laws 1947, c. 210,§5). If the public use which justifies the exercise of eminent domain in the first instance is the use of the property for purposes other than slums, that same public use continues after the property is transferred to private persons. The public purposes for which the land was taken are still being accomplished.' The resale or lease with conditions consistent with the redevelopment plan are an essential and continuing part of the public purpose. This has been recognized by many jurisdictions. *Hunter v. Norfolk Redevelopment & Housing Authority*, 195 Va. 326, 78 S.E. 2d 893; *Zurn v. Chicago*, 389 Ill. 114, 59 N. E. 2d 18; *State ex rel. Bruestle v. Rich*, 159 Ohio St. 13, 110 N.E. 2d 778; Matter of Slum Clearance in the City of Detroit, 331 Mich. 714, 50 N.W. 2d 340."

In Annotation 44 A.L.R. 2d 1421, *et seq.*, (1955), may be found a list of cases from twenty states, and three cases from the United State Courts — including *Berman v. Parker, supra,* in which the Supreme Court of the United States in 1954 upheld the Urban Renewal Act of the District of Columbia, and settled the question of "public use," as far as the due process clause of the federal constitution is concerned — generally upholding the validity of redevelopment laws as serving a "public use," and expressly or implicitly rejecting the contention that a public use or purpose is not served by the redevelopment acts in question because of provisions for the transfer of lands acquired to private interests. See also in accord the scholarly opinion of the Supreme Court of Texas in *Davis v. City of Lubbock and Urban Renewal Agency of the City of Lubbock, Texas,* (15 July 1959), 326 S.W. 2d 699, wherein numerous text and law review articles are cited. In some jurisdictions, constitutional provisions of greater or lesser specificity have helped the Court to reach the conclusion. See especially *Murray v. La Guardia* (1943) 291 N.Y. 320, 52 N.E. 2d 884, cert. denied 321 U.S. 771, 88 L. Ed. 1066.

The Courts of Florida, *Adams v. Housing Authority,* 1952, 60 So. 2d 663; of Georgia, *Housing Authority v. Johnson,* 1953, 209 Ga. 560, 74 S.E. 2d 891; and of South Carolina, *Edens v. City of Columbia,* 1956, 228 S.C. 563, 91 S.E. 2d 280, have held to the contrary. On 18 November 1959 the Supreme Court of Florida in *Grubstein v. Urban Renewal Agency of City of Tampa,* 115 So. 2d 745, by a 4 to 3 decision, held that provisions of the Urban Renewal Law re-

lating to slum clearance and redevelopment are not unconstitutional, even though the law provides for the lease or sale of the property to private interests. The majority opinion said: "It can thus be seen that the real distinction between the statute and project plan involved in the *Adams* case and those involved in the instant case lies in the *purpose* sought to be achieved thereby." Subsequent to the case of *Housing Authority v. Johnson,* 1953, the State of Georgia amended its constitution, and in *Bailey v. Housing Authority of City of Bainbridge,* 1959, 214 Ga. 790, 107 S.E. 2d 812, the Court held that the Urban Redevelopment Law of 1955 is expressly authorized by the constitutional amendment, and the sale or the disposition of such areas to private enterprise for private uses or to public bodies for public uses, are not unconstitutional as providing for the taking of private property for a private use and not for a public purpose.

Judge Preyer's conclusion of law that the taking of respondent's property in this proceeding by eminent domain is for a "public use," and is not in violation of Article I, Section 1 or of Article I, Section 17 of the North Carolina Constitution, is correct, and respondent's assignment of error number 1 is overruled.

Respondent assigns as error Judge Preyer's third conclusion of law to the effect that the Urban Redevelopment Law is not an unlawful delegation of legislative power, in violation of Article II, Section 1, of the State Constitution.

It is, of course, fundamental that under Article II, Section 1, of the North Carolina Constitution all legislative power in this State rests in the General Assembly, except as authorized by the Constitution, as in cases of municipal corporations. *Taylor v. Racing Asso.,* 241 N.C. 80, 84 S.E. 2d 390. The General Assembly, however, for the purpose of carrying its enactment into effect may delegate the power to find facts or to determine the existence or nonexistence of a factual situation or condition on which the operation of a law is made to depend, or another agency of the government is to come into existence, provided adequate standards are set forth to guide the agency in so doing. *Harvell v. Scheidt,* 249 N.C. 699, 107 S.E. 2d 549; *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310; *Efird v. Com'rs. of Forsyth,* 219 N.C. 96, 12 S.E. 2d 889.

There is a "distinction generally recognized between a delegation of the power to make a law, which necessarily includes a discretion as to what it shall be, and the conferring of authority or discretion as to its execution. The first may not be done, whereas the latter, if adequate guiding standards are laid down, is permissible under certain circumstances . . . it (the General Assembly) cannot vest

in a subordinate agency the power to apply or withhold the application of the law in its absolute or unguided discretion." *Coastal Highway v. Turnpike Authority, supra.* See to the same effect 11 Am. Jur., Constitutional Law, Section 234; 16 C.J.S., Constitutional Law, Section 138.

Respondent's contention in this connection is: (1) the language of the Urban Redevelopment Law does not create a standard or guide, and (2) "if the act merely provided that a redevelopment commission was to be created upon the finding that blighted areas existed then there would be no delegation of legislative authority," but the act goes further and vests in the municipality the legislative power to determine in its unbridled discretion whether it is in the best interests of the public to create the redevelopment commission.

G.S. 160-457(a) authorizes each municipality, as defined in the Urban Redevelopment Law to create a redevelopment commission. Subsection (b) provides that the governing body of a municipality shall not create a redevelopment commission unless it finds: "(1) That blighted areas (as herein defined) exist in such municipality, and (2) That the redevelopment of such areas is necessary in the interest of the public health, safety, morals or welfare of the residents of such municipality." A "blighted area" is defined in G.S. 160-456(q) as follows: " 'Blighted area' shall mean an area in which there is a predominance of buildings or improvements (or which is predominantly residential in character), and which, by reason of dilapidation, deterioration, age or obsolescence, inadequate provision for ventilation, light, air, sanitation, or open spaces, high density of population and overcrowding, unsanitary or unsafe conditions, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors, substantially impairs the sound growth of the community, is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency and crime, and is detrimental to the public health, safety, morals or welfare; provided, no area shall be considered a blighted area nor subject to the power of eminent domain, within the meaning of this article, unless it is determined by the planning commission that at least two-thirds of the number of buildings within the area are of the character described in this subsection and substantially contribute to the conditions making such area a blighted area; provided that if the power of eminent domain shall be exercised under the provisions of this article, the respondent or respondents shall be entitled to be represented by counsel of their own selection and their reasonable counsel fees fixed by the court, taxed as a part of the costs and paid by the petitioners."

It is a fundamental rule of statutory construction that sections and acts *in pari materia,* and all parts thereof, should be construed together and compared with each other. *Keith v. Lockhart,* 171 N.C. 451, 88 S.E. 640, Ann. Cas. 1918D 916; *Blowing Rock v. Gregorie,* 243 N.C. 364, 90 S.E. 2d 898; 50 Am. Jur., Statutes, Section 348. If the governing body of a municipality should find that "blighted areas" exist within its corporate limits, it logically follows that it is a finding to the effect "that the redevelopment of such areas is necessary in the interest of the public health, safety, morals or welfare of the residents of such municipality."

The General Assembly has prescribed a definite and adequate guide, and the governing body of the municipality in creating or not creating a redevelopment commission cannot act "in its absolute or unguided discretion." In our opinion, and we so hold, the Urban Redevelopment Law does not confer any illegal delegation of legislative power upon petitioners in violation of Article II, Section 1, of the North Carolina Constitution, as contended by respondent. We find support for the conclusion we have reached in the overwhelming weight of the authorities in other jurisdictions. *Gohld Realty Co. v. City of Hartford,* 141 Conn. 135, 104 N.E. 2d 365; Opinion of the Justices, 254 Ala. 343, 48 So. 2d 757; *Rowe v. Housing Authority,* 220 Ark. 698, 249 S.W. 2d 551; *Redevelopment Agency of San Francisco v. Hayes,* 122 Cal. App. 2d 777, 266 P. 2d 105, cert. den. *Van Hoff v. Redevelopment Agency of San Francisco,* 348 U.S. 897, 99 L. Ed. 705; *State v. Urban Renewal Agency,* 179 Kan. 435, 296 P. 2d 656; *Zurn v. Chicago,* 389 Ill. 114, 59 N.E. 2d 18; *People ex rel. Gutknecht v. Chicago,* 414 Ill. 600, 111 N.E. 2d 626; *People ex rel. Gutknecht v. Chicago,* 3 Ill. 2d 539, 121 N.E. 2d 791; *Zisook v. Maryland Drexel Neighborhood Redevelopment Corp.,* 3 Ill. 2d 570, 121 N.E. 2d 804; *Crommett v. City of Portland,* 150 Me. 217, 107 A. 2d 841; *Herzinger v. Mayor & City Council of Baltimore,* 203 Md. 49, 98 A. 2d 87; *State ex rel. Dalton v. Land Clearance Authority,* 364 Mo. 974, 270 S.W. 2d 44; *Velishka v. Nashua, supra; Sorbino v. New Brunswick,* 43 N.J. Super. 554, 129 A. 2d 473; *Murray v. La Guardia, supra; Foeller v. Housing Authority of Portland,* 198 Ore. 205, 256 P. 2d 752; *Belovsky v. Redevelopment Authority,* 357 Pa. 329, 54 A. 2d 277, 172 A.L.R. 953; Opinion to the Governor, 76 R.I. 249, 69 A. 2d 531; *Ajootian v. Providence Redevelopment Agency,* 80 R.I. 73, 91 A. 2d 21; *Nashville Housing Authority v. Nashville,* 192 Tenn. 103, 237 S.W. 2d 946; *David Jeffrey Co. v. Milwaukee,* 267 Wis. 559, 66 N.W. 2d 362; *Hunter v. Norfolk Redevelopment & Housing Authority, supra; Berman v. Parker, supra;* Anno. 44 A.L.R.

2d 1427, *et seq.* See also *Cox v. Kinston, supra.* Respondent's assignment of error number two in this connection is untenable, and is overruled.

Respondent assigns as error Judge Preyer's fourth conclusion of law to the effect that the Urban Redevelopment Law does not confer upon petitioners the power to grant to a person or set of persons exclusive or separate emoluments or privileges from the community not in consideration of public services, in violation of Article I, Section 7 of the North Carolina Constitution.

G.S. 160-464(a), set forth above, empowers the Redevelopment Commission to sell, exchange or transfer real property or any interest therein to a private person, but such sale, etc., is "subject to such covenants, conditions and restrictions as may be deemed to be in the public interest or to carry out the purposes" of the Urban Redevelopment Law, and "may be made only after, or subject to, the approval of the redevelopment plan by the governing body of the municipality and after public notice and award as specified in" G.S. 160-464(b). G.S. 160-464(b) prescribes, "no sale of any property by the commission . . . or any contract with a developer shall be effected except after advertisement bid and awarded as hereinafter set out," except in case of a private sale to the municipality or other public body as specified in subsection (c) (1), (2) and (3) of G.S. 160-464. Subsection (b) provides all bids may be rejected, and further provides after receipt of all bids the sale shall be made to the highest responsible bidder.

Respondent's contention is that the provision that the property is to be sold "to the highest responsible bidder" means only that there is no discrimination in the selection of the purchasers, and not that ultimately a certain person or set of persons may not receive special benefits, in that the Urban Redevelopment Law does not provide that the property shall be sold at its use value or actual value.

Although the legislative findings and declaration of policy have no magical quality to make valid that which is invalid, and are subject to judicial review, they are entitled to weight in construing the statute and in determining whether the statute promotes a public purpose or use under the Constitution. *Velishka v. Nashua, supra.* The ultimate result which the challenged statute seeks to achieve is to eliminate the injurious consequences caused by a blighted area in a municipality, and to substitute for them a use of the area which will render impossible future blight and its injurious consequences. The challenged statute is a preventive measure. A sale in a redevelopment area to a redeveloper, subject to the restrictions placed around the

sale, etc., by the statute, is proper, for normally property should not be kept in public ownership but should be restored to the tax rolls when the public use has no further need for it. The sale is not the primary purpose of the project, but is only incidental or ancillary to it, and does not affect the public nature of the transaction as a whole. Such a sale, exchange, etc., cannot confer exclusive or separate emoluments or privileges to a person or set of persons, for the sale is to be made after public notice to the highest responsible bidder, and all bids may be rejected: a sale, exchange, etc., in which all persons are entitled to bid, and it is a logical inference that at such a sale, exchange, etc., the property will bring its fair market value. If not, the bid can be rejected. The great cities of Europe have been largely rebuilt through the expenditure of public moneys by the edicts of their rulers. If our cities are to be held unable, under our Constitution, to plan and construct such reconstruction projects, our cities must continue to be marred by areas, which are centers of disease and crime, constitute vicious influences for the young, and while contributing little to the tax income to our cities, consume an excessive proportion of its revenues because of the extra services required for police, fire, health and other forms of protection. It may be that the measure may prove eventually to be a disappointment, and is ill advised, but the wisdom of the enactment is a legislative and not a judicial question. The General Assembly has the right to experiment with new modes of dealing with old evils, except as prevented by the Constitution.

We find support for the conclusion we have reached in the following cases: Opinion of the Justices (Ala.), *supra; Rowe v. Housing Authority,* (Ark.), *supra; Redevelopment Agency of San Francisco v. Hayes,* (Cal.), *supra,* cert. den *Van Hoff v. Redevelopment Agency of San Francisco,* 348 U.S. 897, 99 L. Ed. 705; *State v. Urban Renewal Agency of Kansas City,* (Kan.), *supra; Chicago Land Clearance Commission v. White,* 411 Ill. 310, 104 N.E. 2d 236; *State ex rel. Dalton v. Land Clearance Authority,* (Mo.), *supra; Velishka v. Nashua,* (N.H.), *supra; Foeller v. Housing Authority of Portland,* (Ore.), *supra; Ajootian v. Providence Redevelopment Agency,* (R.I.), *supra; Hunter v. Norfolk Redevelopment & Housing Authority,* (Va.), *supra; David Jeffrey Co. v. Milwaukee,* (Wis.), *supra.* See Anno. 44 A.L.R. 2d, p. 1445-6, "Value of property transferred compared to price."

In this connection the Supreme Court of Pennsylvania said in *Belovsky v. Redevelopment Authority, supra:* "One of the objections urged against the constitutionality of the Urban Redevelopment Act is the feature of the 'redevelopment project' which contemplates the sale by the Authority of the property involved in the redevelopment,

it being claimed that thereby the final result of the operation is to take property from one or more individuals and give it to another or others. Nothing, of course, is better settled than that property cannot be taken by government without the owner's consent for the mere purpose of devoting it to the private use of another, even though there be involved in the transaction an incidental benefit to the public. But plaintiff misconceives the nature and extent of the public purpose which is the object of this legislation. That purpose, as before pointed out, is not one requiring a continuing ownership of the property as it is in the case of the Housing Authorities Law in order to carry out the full purpose of that act, but is directed solely to the clearance, reconstruction and rehabilitation of the blighted area, and after that is accomplished the public purpose is completely realized. When, therefore, the need for public ownership has terminated, it is proper that the land be re-transferred to private ownership, subject only to such restrictions and controls as are necessary to effectuate the purposes of the act. It is not the object of the statute to transfer property from one individual to another; such transfers, so far as they may actually occur, are purely incidental to the accomplishment of the real or fundamental purpose."

Respondent's assignment of error number three to Judge Preyer's conclusion of law number four is overruled.

Respondent assigns as error Judge Preyer's fifth conclusion of law to the effect that as only funds derived from sources other than *ad valorem* tax revenue by the city of Greensboro have been used, appropriated or spent by petitioners, and that sums in the future will be appropriated from sources other than *ad valorem* tax revenue, the provisions of Article V, Section 3, of the North Carolina Constitution, are not applicable to the determination of this proceeding. The findings of fact do not show that the funds spent or appropriated by petitioners here came from taxes levied, therefore, Article V, Section 3, of our Constitution is not applicable to a decision here. This assignment of error is overruled. A determination of the question whether or not the further provision of G.S. 160-470, that "to obtain funds for the purpose, the municipality may levy taxes and may in the manner prescribed by law issue and sell its bonds" is constitutional is not before us for decision, and must await another day and another suit, when the question is squarely presented.

We find no constitutional infirmity in the Urban Redevelopment Law to the extent that it has been challenged by assignments of error in this proceeding. Respondent's assignments of error numbers five

and six are. overruled. Judge Preyer's unchallenged findings of fact, support his conclusions of law, and his judgment based thereon.

Affirmed.

BOBBITT, J., concurring. I agree fully that the condemnation of defendant's property may not be defeated on any ground asserted by defendant.

While defendant pleaded the several constitutional provisions referred to in the Court's opinion, it did not plead Article VII, Section 7, Constitution of North Carolina, which provides: "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless approved by a majority of those who shall vote thereon in any election held for such purpose." Defendant's failure to plead Article VII, Section 7, lends support to the view expressed in the dissenting opinion of *Justice Higgins.*

Whether the City of Greensboro has authority to contract any debt, or to pledge its faith or loan its credit, or to levy or collect any tax, to provide funds to effectuate the redevelopment project, unless approved by a majority of the voters, is not presented for decision on this appeal. Assuming approval by a majority of the voters in such election is required, it would be futile as well as expensive to conduct such election if, after approval by a majority of the voters, it were then decided that plaintiffs have no right to condemn for reasons now asserted by defendant. Hence, I am persuaded the present decision is justified even though all pertinent questions were not raised by defendant. Defendant, in my opinion, has fully and fairly presented on this appeal all available arguments bearing upon the questions presently considered and decided.

With this explanation, I concur.

HIGGINS, J., dissenting. The records in this case and in its predecessor, *Greensboro v. Wall,* 247 N.C. 516, 101 S.E. 2d 413, show a comprehensive and far-reaching redevelopment plan for the City of Greensboro. To carry out the plan will require the city and its agencies to levy taxes and to issue bonds.

The city has available the sum of $15,600 for the purchase of the lot 20 x 90 feet here involved. In a highly technical sense the transaction, therefore, may stop half a step short of butting head-on into the constitutional prohibition against expenditures of tax and bond money without an approving vote. This little transaction involves a lot which the city does not need except as a part of the plan. This

proceeding, therefore, appears to me to be a trial balloon to see if perchance this Court may be led along step by step to the approval of the plan without requiring the city to submit the issue to the voters. The city should be required to face up to the real issue. I vote to reverse the judgment and dismiss this action on the ground that it does not present a real controversy.