Milton Albert, J.
This is a claim for the appropriation of claimant’s land pursuant to section 30 of the Highway Law, which proceeding is described as Interstate Route 503, Route 17 Interchange to Route 208, Orange County, Map No. 540, Parcel No. 890 (fee taking without access); Map No. 592, Parcel Nos. 891 and 892 (two permanent easement takings).
The aforesaid maps and descriptions were filed in the office of the County Clerk of Orange County on November 2, 1967. However, there were earlier entries by the State — Le., Map No. 540 on September 18, 1967 and Map No. 592 on October 9, 1967. At the trial the parties stipulated to the use of the September 18, 1967 date for all the takings.
The claim was filed with the Clerk of the Court of Claims and the Attorney-General on December 14, 1967 and has not been assigned or submitted to any other court or tribunal for audit or determination.
The court adopts the descriptions of the appropriated property as shown on the maps and descriptions filed in the Orange County Clerk’s office, copies of which are attached to the claim and same are incorporated herein by reference.
Claimant was the owner of the property by reason of a deed dated March 25, 1953 from Helen P. Bull, grantor, to John P. Bull, grantee, recorded in the Orange County Clerk’s office on March 28, 1953, in Liber 1262 of Deeds, at page 216.
Before the appropriation the property consisted of 135.62± acres, located on the south side of Route No. 211 in the Town of Wallkill in Orange County. It was an irregularly shaped parcel with approximately 800± feet of frontage along the highway. ^ Its rear, or southerly boundary, was approximately 1,800± feet in length and it had about a 4,000±-foot depth along its *265 longest side boundary. A. private 50± -foot-wide road led southeasterly from Route No. 211 into the parcel.
The parcel was cleared farmland, generally level but with some gently rolling features. It sloped downward, gently, from the highway toward the rear.
In addition to the private road, the parcel waS improved with a farm residence of frame construction in fair condition, a tenant house in poor condition, a barn and a storage building. The improvements were serviced with a well and a septic system. Three of these improvements were located at the end of the private road while the fourth was located about two-thirds of the way in from Route 211. All were in the southerly portion of claimant’s lands.
The court has viewed the property.
The subject proceedings appropriated 32.524± acres in fee without access (Map No. 540, Parcel No. 890) and 1.245± acres in the form of permanent easements taken for drainage purposes (Map No. 592, Parcel No. 891 for 1.108± acres and Parcel No. 892 for 0.137± acres).
The appropriation in fee was an irregular parcel running diagonally across claimant’s land in an east-west direction, severing claimant’s remaining property into two segments. The appropriation was 698± feet in length at its westerly side, along claimant’s southerly lot line. Its southerly side, as it traversed claimant’s land was 2,100± feet; and on the east, it ran 566± feet along claimant’s lot line. Its northerly line was irregular. Going eastward from claimant’s southerly lot line, the line went 574.57± feet, thence southeasterly 524.14± feet, thence southerly 373.06± feet, thence easterly to the property line 998.50± feet. The two drainage easements were located to the south of the fee appropriation. No improvements were located within the appropriation save for the gravel road as it crossed the appropriation.
The appropriation left claimant with two remainders. One remainder, to the north, contained 27.63± acres and retained its original highway frontage along Route 211. The other remainder, to the south, contained 74.22± acres, and it was in this area that the building improvements were located. This portion was landlocked.
Claimant’s expert, basing his appraisal on 135.62± acres of land valued the property before the appropriation at $101,700. He broke this down into $15,000 for roadfront lots at $1,500 an acre for the 10± acres of highway frontage; 50.154± acres (including the appropriated area) at $750 per acre, totaling $37,625; 10± acres of farmsite at $550 an acre, or $5,500 and *266 64.22± acres of meadowland at $325 an acre or $20,871. This gave him a total land value of $78,996. To this he added $8,000 for the residence, $5,500 for the tenant house and $9,200 for the barn, a total of $22,700 for the buildings. His total before value, therefore, was $101,700 rounded.
He valued the property after the appropriation at $30,360, $28,910 for the land and $1,450 for the buildings. His damage claim, therefore, was $71,340 rounded, of which $25,084.75 was for the direct damage, and consequential damage to the land of $25,001.25 and to the buildings of $21,250.
The State’s expert, basing his appraisal on 150± acres of land, valued the' property at $102,000 rounded, before the appropriation. This he broke down to $12,000 for the residence and one acre parcel, and the remaining lands at $600 per acre value or $89,400. His after value he stated to be $55,000, of which the one acre homesite and building were valued at $6,000 and the remaining lands at $49,000. This gave him a damage value of $47,000 divided $19,500 for direct damage at $600 per acre for the 32.524± acres of the ‘ ‘ take ’ ’ and $200 for the permanent easement valued at $175 per acre. Consequential damages he claimed to be $27,300 and to this he added $3,500 for a cost-to-cure, being the cost of acquisition of a strip of land to provide access to the landlocked parcel from a road to the south called Bart Bull Road. The State’s expert indicated that this strip would be appropriated by the State for such purpose.
At the trial the State offered to appropriate such a strip of land from a neighbor’s property in order to provide such a substitute means of private access and also offered to provide claimant with a deed for the strip so taken. This it proposed to do pursuant to subdivision 24-d of section 10 of the Highway Law (added by L. 1967, ch. 193, eff. April 10, 1967). The claimant rejected such offers for reasons including the following:
1. The taking occurred over two years ago and the State’s liability for damages is required to be determined as of then and as of the situation in which the claimant was then left. While the claimant might recognize a short period of time after the appropriations for such offers to be made, his position was that such offers made more than two years after the appropriation were neither timely nor within a reasonable period thereafter. With respect to this reasoning, the claimant cited Minesta Realty Co. v. State of New York (29 A D 2d 335, mot. for lv. to app. den., 22 N Y 2d 643) and Wolfe v. State of New York (22 N Y 2d 292).
2. The neighbor whose lands would be taken might object on constitutional grounds and if his objections were sustained claimant would not have his access road and, at the same time, *267 be inadequately compensated by the State for his instant claim, because compensation here then would be on the basis of his having access to public highways from all of his remaining property rather than on the basis of a major portion of his remaining property being landlocked.
After considering the above position of the claimant and language of such subdivision 24-d which is phrased in terms of a written agreement between the State Superintendent of Public Works (now Commissioner of Transportation; Transportation Law, §§ 11, 51, 54) and a claimant property owner for conveyance by the former to the latter of land so appropriated for such a means of access, the court ruled at the trial that it would not require the claimant to accept such offers by the State. Based on the reasoning of Miriesta and Wolfe, cited above, the court finds that such offers made by the State more than two years after the takings were not timely.
The State’s appraiser was then asked on cross-examination as to what his after value would be if the 74.22± acre remainder were to be considered as landlocked. He replied that his after value would be $36,000 instead of $55,000 and that his cost-to-cure damage figure of $3,500 would, of course, be eliminated. His final damage figure then was $66,000 — i.e., $102,000 before value less $36,000 after value. The appraiser testified that he ascribed a 10% after value to the landlocked parcel.
After careful consideration of the testimony at the trial, the appraisals and exhibits in evidence, the demeanor of the witnesses, and the court’s view of the subject property, the court finds as follows:
1. The court finds the highest and best use of the property prior to the appropriation was for future residential development in accordance with the zoning ordinances, with interim use as a farm. After the appropriation, the parcel still retaining the highway frontage had the same highest and best use. The landlocked remainder to the south had a use as excess land for sale to an adjacent owner.
2. The court adopts claimant’s Exhibit 4 in evidence as showing that the before area of the claimant’s land was 135.62± acres.
3. The court adopts the claimant’s appraiser’s before value of $101,700 as the before fair market value of the subject property.
4. With respect to after value, the court finds that claimant’s appraiser’s approach was more realistic concerning the after values of the landlocked area and the buildings thereon. The court adopts such after values — i.e., $875.50 plus $6,422 for landlocked land and $1,450 for buildings on landlocked land; total, $8,747.50 after value.
*268 With respect to the remaining land area that does have access to Route 211, the court adopts claimant’s appraiser’s after value of 10 frontage acres at $1,500 per acre for a total of $15,000, but finds that claimant’s appraiser’s after value of 17.63± acres behind such frontage acres at $375 per acre is too low. Based on claimant’s appraiser’s sales 1, 9,10 and 14 and the sales used by the State’s appraiser for valuing this land on an acreage basis in the after situation, and considering that this 17.63± acre area will back up on a non-access basis to the new highway Route 84, the court finds that the after fair market value of such 17.63± acres was $500 per acre for a total value of $8,815.
The court totals its after fair market values at $32,562.50— which the court rounds to $32,575.
5. Subtracting its after fair market value of $32,575 from its before fair market value of $101,700, the court finds that claimant has been damaged in the sum of $69,125, of which $25,075 rounded is direct damage and $44,050 rounded is consequential damage.
The claimant is awarded the sum of $69,125 for all damages direct and consequential, with interest thereon from September 18,1967 to the date of entry of judgment herein.