Marshall E. Livingston, J.
This is an action to declare an appropriation of a 20-foot strip of plaintiff’s land on August 15, 1969 by the defendant, pursuant to the Highway Law of the State of New York, void and of no effect. This nonjury case was tried before me in January, 1972.
On January 19, 1967 and on September 20, 1967, respectively, the State appropriated about two thirds of an acre of land from the plaintiff (Tobin) and about two thirds of an acre of land from Marcello D’Amico et al. (D’Amico). These lands were situated at the north end of their respective properties and extended along the entire north lines thereof, as they were bounded by Campbell Street, to which access was thereafter denied.
The appropriation was for the purpose of acquiring land for the construction of Interstate Highway 580 (490), Western Expressway, Mt. Bead Boulevard to Broad Street, in the City of Bochester, New York.
The unappropriated portions of Tobin’s and D’Amico’s properties extended southerly to Maple Street to which street both properties had access.
The State claims, however, that the access to Maple Street from the D ’Amico property is unsuitable and unreasonable. This is the reason for its appropriation of the additional land from Tobin, which is the subject of this lawsuit.
*325 D’Amico’s land lies east of and next to the subject Tobin property. Therefore, on August 15,1969, the State appropriated a strip of land 20 feet in depth, north to south, and about 120 feet wide, east to west, along the now north line of Tobin, to afford a private access to the west for D’Amico from their property to Boswell Street, as it is designated on the maps in evidence.
The State claims the taking is authorized by the Highway Law (§ 10, subd 24-d), which provides in part that the Commissioner of Transportation shall: ‘ ‘ Have power, whenever such commissioner of transportation deems it is necessary as a result of work of construction, reconstruction or maintenance of state highways, to provide for the re-establishment of private access to a public road where such access is destroyed by acquisition of right of way for the project. If such re-establishment of private access requires additional property or if it is necessary that such re-establishment of private access be made to other property, he may acquire such property as may be necessary for the purposes of this subdivision, in the same manner as other property is acquired for state highway purposes pursuant to this chapter, and he may enter into a written agreement with the owner of such private access to convey such property as deemed necessary for the purposes of this subdivision to such owner on terms beneficial to the state ’ ’.
At the time subdivision 24-d of section 10 of the Highway Law was enacted (L. 1967, ch. 193, eff. April 10, 1967), the memorandum in support of the subsection by the Department of Public Works (later Department of Transportation) justified the measure in this language: “ 3. Justification for bill: Frequently in acquiring property in connection with constructing, reconstructing or improving State highways existing access to a public road is destroyed and cannot be re-established within the boundaries of the premises of the party affected. Under these circumstances the affected party has a claim against the State for the full value of his property, which has become landlocked. This has resulted in tremendous unnecessary costs to the State over the years. Therefore, it is highly desirable for the Superintendent of Public Works to have the power to acquire substitute property for the purpose of re-establishing access to a public road and thus reduce property damage. ’ ’
Tobin contends D ’Amico’s access to Maple Street is now and always has been suitable and reasonable and that, therefore, subdivision 24-d of section 10 of the Highway Law does not authorize an appropriation of a second means of access to a *326 public street for a private property owner. In addition, if it purports to authorize such an appropriation for a second means of access to a public street for a private property owner, then this violates both State and Federal due process clauses because (a) the instant taking is not a valid substitute taking and (b) is for the sole purpose of conveying access to a single property owner for his exclusive use for a private purpose.
In order that the court may have all the facts affecting or relevant to this taking in true perspective, counsel have stated the fact that there is now pending in the New York State Court of Claims an action by D ’Amico against the State for damages for its appropriation of September 20, 1967. This claim is awaiting the disposition of the case at bar.
It is apparent that the final outcome here would materially affect the compensatory damage to D’Amico in the Court of Claims case. In that suit the State and D’Amico entered into an “agreement of adjustment” (see letter of attorney for D ’Amico dated February 28, 1972, now a part of the record by my direction), dated June 28, 1969 and approved September 3, 1969, prior to the commencement of this case. The agreement calls for certain fixed monetary consideration to compensate D’Amico for the appropriation of September 20, 1967, conditioned upon the State conveying to D’Amico the 20-foot by 120-foot strip appropriated from Tobin which is the subject of this lawsuit. This strip provides access to the D’Amico land from Boswell Street.
The instant appropriation is suspect because of the aura around it. The State claims D ’Amico does not have suitable or reasonable access to Maple Street. Such access could be made reasonable and suitable by moving the concrete block building that now blocks the easterly entrance to the D’Amico property from Maple Street because this building is within 40 feet or so of the main D’Amico building. Moving this most northerly of D ’Amico’s buildings would clearly be compensatory damage not necessary if the Tobin strip is conveyed to D ’Amico by the State.
Actually, it appears to me, and I so find, that what the State did, on August 15, 1969, when it appropriated Tobin’s strip of land, was to try and mitigate the damage (for which the State is responsible) for the D’Amico appropriation of September 20, 1967 by taking the strip of Tobin property to furnish private access to D’Amico under the guise of the Highway Law (§ 10, subd. 24-d). This it may not do.
Had the State in 1967, shortly after subdivision 24-d became effective on April 10, when it should have been apparent the *327 problems that would arise, appropriated the access strip of Tobin as a package with the prior Tobin and D’Amico taking, a precise plan would have been ready for determination.
Within the limits of the research of both counsel and the court, this case appears to be of first impression. There are rather clearly enunciated principles to which I shall refer, but all of them relate to circumstances where the State unilaterally sought to substitute a solution for the original condemnee to extricate itself from “ tremendous unnecessary costs ” (Memorandum in support of Department of Public Works proposal, L. 1967, ch. 193, supra). In this case Tobin is a condemnee from whom land was taken for the benefit of another.
Three cases support my conclusion that the plaintiff here must be upheld, even though in these cases the State proposed to provide to the claimant substitute access in order to limit the claimant’s damages (Minesta Realty Co. v. State of New York, 29 A D 2d 335; Wolfe v. State of New York, 22 N Y 2d 292; Bull v. State of New York, 61 Misc 2d 263).
Briefly, I shall recap the salient facts and holdings. In Minesta (29 A D 2d 335, supra) the State permanently appropriated a right of way in 1960 which severed claimant’s access to its warehouse, resulting in direct damage for loss of land of nearly $4,000 and consequential damage to the landlocked warehouse of about $140,000. In 1963, when the case was on the calendar, the State unilaterally filed a “ correction map ” providing the claimant with an access to the warehouse. Held, the State may not reduce its damage to claimant. Claimant’s right to compensatory damage ‘ ‘ vested when the original appropriation map was filed since the State acquired title at that time ” (supra, p. 337). The court also said (supra, p. 337) with applicability to this case, ‘ ‘ nor can it [the State] thereafter substitute a new access highway in lieu of damages after depriving the claimant [here D’Amico] of his original access (Matter of Corporation Counsel of City of N. Y. [Attorney St.), 186 App. Div. 669) ”.
Wolfe v. State of New York (22 N Y 2d 292, 295, supra) posed the question, ‘ ‘ whether the State may change the terms of the appropriation, or modify its original taking, by filing a correction map or adopting some other procedural device, so as to mitigate the consequences to the owner and reduce the compensable damages to be paid” (emphasis supplied). At page 297, the court said: ‘1 Such a procedure or device clearly offends against our settled rule prohibiting the State from attempting to reduce its damages by a subsequent limitation [or enlargement] on its original appropriation ”. Here again in Wolfe the *328 claimant was' the owner from whom the land was taken, and the State tried to return part of it to mitigate its damages.
In Bull v. State of New York (61 Misc 2d 263, 266-267, supra) the court said:
6 ‘ At the trial the State offered to appropriate such a strip of land from a neighbor’s property in order to provide such a substitute means of private access and also offered to provide claimant with a deed for the strip so taken. This it proposed to do pursuant to subdivision 24-d of section 10 of the Highway Law (added by L. 1967, ch. 193, eff. April 10, 1967). The claimant rejected such offers for reasons including the following:
“ 1. The taking occurred over two years ago and the State’s liability for damages is required to be determined as of then and as of the situation in which the claimant was then left. While the claimant might recognize a short period of time after the appropriations for such offers to be made, his position was that such offers made more than two years after the appropriation were neither timely nor within a reasonable period thereafter. With respect to this reasoning, the claimant cited Minesta Realty Co. v. State of New York (29 A D 2d 335, mot. for Iv. to app. den. 22 N Y 2d 643) and Wolfe v. State of New York (22 N Y 2d 292).
“ 2. The neighbor whose lands would be taken might object on constitutional grounds and if his objections were sustained claimant would not have his access road and, at the same time, be inadequately compensated by the State for his instant claim, because compensation here then would be on the basis of his having access to public highways from all of his remaining property rather, than on the basis of a major portion of his remaining property being landlocked.
‘ ‘ After considering the above position of the claimant and language of such subdivision 24-d which is phrased in terms of a written agreement between the State Superintendent of Public Works (now Commissioner of Transportation; Transportation Law, §§ 11, 51, 54) and a claimant property owner for conveyance by the former to the latter of land so appropriated for such a means of access, the court ruled at the trial that it would not require the claimant to accept such offers by the State. Based on the reasoning, of Minesta and Wolfe, cited above, the court finds that such offers made by the State more than two years after the takings were not timely.”
No difficulty is found in extending the principles enunciated in the above cases to the facts in this dispute.
*329 For about two years from September 20, 1967, when it took the D’Amico land, until August 15, 1969, when Tobin’s strip was taken, the State did nothing, although the Highway Law (§ 10, subd. 24-d) had been effective for more than two years. D’Amico’s direct and consequential damages were fixed on September 20, 1967. Beyond that, however, the State may not come in at that late date and appropriate the Tobin strip in a proceeding which any reasonable person might well conclude was an attempt to save the State consequential damages under the cloak of a substitute access appropriation (Highway Law, § 10. subd. 24-d).
It is unnecessary in the posture of this case to determine the constitutionality of Highway Law (§ 10, subd. 24-d). In addition I do not reach the question of whether D’Amico presently has suitable or reasonable access to Maple Street. If D’Amico has suitable and reasonable access to Maple Street, then the State may not appropriate a second access from Tobin and convey the same for the private and exclusive use of D’Amico under color of authority of the Highway Law. Likewise, the question of whether such uses are in fact “ public ” uses vis-avis “ private ” uses is a judicial one to be decided by the court (cf. Cuglar v. Power Auth. of State of New York, 4 Misc 2d 879, 898, affd. 4 A D 2d 801, affd. 3 N Y 2d 1006; City of Utica v. Damiano, 22 Misc 2d 804, 807; Matter of Fam v. Shapiro, 19 AD 2d 637).
The plaintiff may have judgment:
1. That the defendant, and every person claiming under it, by title accruing after the filing of the judgment roll, or of the notice of pendency of this action, as prescribed by law, be forever barred from asserting any claim to an estate or interest in said subject parcel, the invalidity of which estate or interest is established herein;
2. That the map and description known as Map No. 721 and Parcel 732 filed in the Monroe County Clerk’s office on August 15, 1969, and the Notice of Appropriation which was recorded that same day in Liber 4004 of Deeds at page 281, be canceled and expunged from the records of the Monroe County Clerk and treated as a nullity; or in the alternative
3. That the said appropriation of August 15, 1969 of the subject parcel be, and it hereby is, rescinded and declared to be null and void;
4. That the plaintiff have the exclusive right of possession and enjoyment to the subject parcel; and
5. That plaintiff recover the costs of this action.